**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

BETTY DUKES; PATRICIA SURGESON;
CLEO PAGE; DEBORAH GUNTER;
KAREN WILLIAMSON; CHRISTINE
KWAPNOSKI; EDITH ARANA,
          *Plaintiffs-Appellees,*

        v.

WAL-MART, INC.,
          *Defendant-Appellant.*

No. 04-16688

D.C. No.
CV-01-02252-MJJ

BETTY DUKES; PATRICIA SURGESON;
CLEO PAGE; DEBORAH GUNTER;
KAREN WILLIAMSON; CHRISTINE
KWAPNOSKI; EDITH ARANA,
          *Plaintiffs-Appellants,*

        v.

WAL-MART, INC.,
          *Defendant-Appellee.*

No. 04-16720

D.C. No.
CV-01-02252-MJJ

ORDER AND
OPINION

Appeal from the United States District Court
for the Northern District of California
Martin J. Jenkins, District Judge, Presiding

Argued and Submitted
August 8, 2005—San Francisco, California

Filed December 11, 2007

Before: Harry Pregerson, Andrew J. Kleinfeld, and
Michael Daly Hawkins, Circuit Judges.

16207

Opinion by Judge Pregerson;
Dissent by Judge Kleinfeld

**COUNSEL**

Theodore J. Boutrous, Jr., (argued & briefed) Gibson, Dunn & Crutcher, Los Angeles, California, for the defendant-appellant-cross-appellee.

Brad Seligman (argued), Jocelyn D. Larkin, The Impact Fund, Berkeley, California; Joseph M. Sellers, Christine E. Webber, Julie Goldsmith Reiser, Cohen, Milstein, Hausfeld & Toll, Washington, D.C.; Irma D. Herrera, Debra A. Smith, Equal Rights Advocates, San Francisco, California; Stephen Tinkler, Charles Firth, Tinkler & Firth, Santa Fe, New Mexico; Debra Gardner, Public Justice Center, Baltimore, Maryland; Steve Stemerman, Elizabeth A. Lawrence, Davis, Cowell & Bowe, LLP, San Francisco, California; Merit Bennett, Merit Bennett, P.C., Santa Fe, New Mexico, (briefed) for the plaintiffs-appellees-cross appellants.

---

**ORDER**

The petition for panel rehearing is DENIED.

The panel's Opinion and Dissent filed February 6, 2007, appearing at 474 F.3d 1214 (9th Cir. 2007), are withdrawn. The new Opinion and Dissent are filed concurrently with this Order.

The petition for rehearing en banc is DENIED as moot. The parties may file a new petition for rehearing or suggestion for rehearing en banc as provided for by Federal Rule of Appellate Procedure 40.

---

**OPINION**

PREGERSON, Circuit Judge:

Plaintiffs filed a class action suit against Wal-Mart alleging sexual discrimination under Title VII of the 1964 Civil Rights Act. The district court certified the class with minor modifications to Plaintiffs' proposed class. We have jurisdiction under 28 U.S.C. § 1292(e). For the reasons set forth below, we

affirm the district court, concluding that it did not abuse its discretion when it certified the class.

## BACKGROUND

Plaintiffs' Third Amended Complaint, brought on behalf of six named plaintiffs and all others similarly situated, asserts claims against Wal-Mart for sex discrimination under Title VII of the 1964 Civil Rights Act. Plaintiffs allege that women employed in Wal-Mart stores: (1) are paid less than men in comparable positions, despite having higher performance ratings and greater seniority, and (2) receive fewer — and wait longer for — promotions to in-store management positions than men. Plaintiffs contend that Wal-Mart's strong, centralized structure fosters or facilitates gender stereotyping and discrimination, that the policies and practices underlying this discriminatory treatment are consistent throughout Wal-Mart stores, and that this discrimination is common to all women who work or have worked in Wal-Mart stores.

On April 28, 2003, Plaintiffs filed a motion to certify a nationwide class of women who have been subjected to Wal-Mart's allegedly discriminatory pay and promotions policies. The proposed class consists of women employed in a range of Wal-Mart positions — from part-time entry-level hourly employees to salaried managers — and is estimated to include more than 1.5 million women. The class seeks injunctive and declaratory relief, back pay, and punitive damages, but does not seek traditional "compensatory" damages.

Plaintiffs proposed that the district court certify the following class pursuant to Federal Rule of Civil Procedure 23:

> All women employed at any Wal-Mart domestic retail store at any time since December 26, 1998, who have been or may be subjected to Wal-Mart's challenged pay and management track promotions policies and practices.

*Dukes v. Wal-Mart Stores, Inc.* ("*Dukes I*"), 222 F.R.D. 137, 141-42 (N.D. Cal. 2004).

On September 23, 2003, after the parties had conducted extensive discovery and filed copious briefs, the district court heard oral argument. At the hearing, Wal-Mart emphasized the "historic" nature of Plaintiffs' motion, inasmuch as it concerns a class of approximately 1.5 million women who work or worked in one or more of Wal-Mart's 3,400 stores in 41 regions at any time since 1998. The court acknowledged Wal-Mart's concerns but noted that, while the class size was large, the issues were not unusual.

## I.   DISTRICT COURT PROCEEDINGS

On June 21, 2004, the district court issued an eighty-four-page order granting in part and denying in part Plaintiffs' motion for class certification. *See Dukes I*, 222 F.R.D. at 187-88. With respect to Plaintiffs' claims for equal pay, the district court granted Plaintiffs' motion as to issues of alleged discrimination and all forms of requested relief. With respect to Plaintiffs' promotion claim, the court's finding was mixed. The court certified the proposed class with respect to issues of alleged discrimination (including liability for punitive damages, as well as injunctive and declaratory relief); however, the court rejected the proposed class with respect to the request for back pay because data relating to the challenged promotions were not available for all class members. Both parties appealed.

## II.   THE APPEAL

Pursuant to Federal Rule of Civil Procedure 23(f), Wal-Mart appealed, contending that the district court erred by: (1) concluding that the class met Rule 23(a)'s commonality and typicality requirements; (2) eliminating Wal-Mart's ability to respond to individual Plaintiff's claims; and (3) failing to recognize that Plaintiffs' claims for monetary relief predomi-

nated over their claims for injunctive or declaratory relief. Plaintiffs cross-appealed, asserting that the district court erroneously limited the backpay relief for many of Plaintiffs' promotion claims.

## DISCUSSION

### I. STANDARD AND SCOPE OF REVIEW

We review a district court's decision regarding class certification for abuse of discretion. *See Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003). The district court's decision to certify a class is subject to "very limited" review and will be reversed "only upon a strong showing that the district court's decision was a clear abuse of discretion." *Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001) (citation omitted); *see also Gonzales v. Free Speech Coal.*, 408 F.3d 613, 618 (9th Cir. 2005) ("Abuse of discretion is 'a highly deferential standard,' under which the appellate court cannot substitute its 'view of what constitutes substantial justification for that of the district court'; rather, the review 'is limited to assuring that the district court's determination has a basis in reason.' " (citation omitted)); *Blyden v. Mancusi*, 186 F.3d 252, 269 (2d Cir. 1999) ("A district court's decision to certify a class is reviewed for abuse of discretion, and '[a] reviewing court must exercise even greater deference when the district court has certified a class than when it has declined to do so.' " (citation omitted)); *Doniger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir. 1997) ("[J]udgment of the trial court should be given the greatest respect and the broadest discretion" (citation omitted)). A court abuses its discretion if it applies an impermissible legal criterion. *See Molski v. Gleich*, 318 F.3d 937, 946 (9th Cir. 2003). Moreover, the district court's factual findings as to the applicability of Rule 23 criteria are entitled to the traditional deference given to such determinations. *See Local Joint Executive Trust Fund v. Las Vegas Sands*, 244 F.3d 1152, 1161 (9th Cir. 2001) (citation omitted).

Rule 23 provides district courts with broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court. *See Armstrong v. Davis*, 275 F.3d 849, 872 n.28 (9th Cir. 2001). If later evidence disproves Plaintiffs' contentions that common issues predominate, the district court can at that stage modify or decertify the class, *see Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in light of subsequent developments in the litigation."), or use a variety of management devices to address the individualized issues that have arisen, *see In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir. 2001); 1 Newberg on Class Actions § 4.26 at 4-91 to 4-97.[1]

Our review is limited to whether the district court correctly selected and applied Rule 23's criteria. *See Bogus v. Am. Speech & Hearing Ass'n.*, 582 F.2d 277, 289 (3d Cir. 1978); *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 295 (1st Cir. 2000) ("An abuse occurs when a court, in making a discretionary ruling, relies upon an improper factor, omits consideration of a factor entitled to substantial weight, or mulls the correct mix of factors but makes a clear error of judgment in assaying them."). Thus, if Plaintiffs demonstrate that they meet Rule 23's requirements, they should be allowed to pursue their action as a class. *See Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 40 (1st Cir. 2003) ("There is even less reason to decertify a class where the possible existence of individual damages issues is a matter of conjecture.").

---

[1] As the district court acknowledged, *Dukes I*, 222 F.R.D. at 143, although federal courts are no longer permitted to engage in "conditional certification," Fed. R. Civ. Proc. 23, advisory committee's notes (2003 amends.), district courts retain the authority to amend or decertify a class if, based on information not available or circumstances not anticipated when the class was certified, the court finds that either is warranted.

## II. CLASS CERTIFICATION AND RULE 23

**[1]** A district court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

The district court must also find that at least one of the following three conditions are satisfied: (1) the prosecution of separate actions would create a risk of: (a) inconsistent or varying adjudications or (b) individual adjudications dispositive of the interests of other members not a party to those adjudications; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class; or (3) the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See* Fed. R. Civ. P. 23(b).

The party seeking certification bears the burden of showing that each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b) have been met. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, *amended*, 273 F.3d 1266 (9th Cir. 2001).

### A. *Rule 23(a)*

The class in this case is broad and diverse. It encompasses approximately 1.5 million employees, both salaried and hourly, with a range of positions, who are or were employed at one or more of Wal-Mart's 3,400 stores across the country. Plaintiffs contend, and the district court found, that the large class is united by a complex array of company-wide discriminatory practices against women.

### 1.  Numerosity

**[2]** Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Wal-Mart does not contest that numerosity is satisfied here, given that both parties estimate that the proposed class includes approximately 1.5 million women.

### 2.  Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality focuses on the relationship of common facts and legal issues among class members. *See, e.g.,* 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 3:10 at 271 (4th ed. 2002). We noted in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998):

> Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

*Id.* at 1019.

The commonality test is qualitative rather than quantitative — one significant issue common to the class may be sufficient to warrant certification. *See e.g., Savino v. Computer Credit, Inc*., 173 F.R.D. 346, 352 (E.D.N.Y. 1997), *aff'd*, 164 F.3d 81 (2d Cir. 1998); *see also* 1 Newberg on Class Actions § 3:10 at 272-74. As the district court properly noted, "plaintiffs may demonstrate commonality by showing that class members have shared legal issues by divergent facts or that they share a common core of facts but base their claims for relief on different legal theories." *Dukes I*, 222 F.R.D. at 145 (citing *Hanlon*, 150 F.3d at 1019).

The district court found that Plaintiffs had provided evidence sufficient to support their contention that significant factual and legal questions are common to all class members. After analyzing Plaintiffs' evidence, the district court stated:

> Plaintiffs have exceeded the permissive and minimal burden of establishing commonality by providing: (1) significant evidence of company-wide corporate practices and policies, which include (a) excessive subjectivity in personnel decisions, (b) gender stereotyping, and (c) maintenance of a strong corporate culture; (2) statistical evidence of gender disparities caused by discrimination; and (3) anecdotal evidence of gender bias. Together, this evidence raises an inference that Wal-Mart engages in discriminatory practices in compensation and promotion that affect all plaintiffs in a common manner.

*Dukes I*, 222 F.R.D. at 166. The court noted that Wal-Mart raised a number of challenges to Plaintiffs' evidence of commonality but concluded that, in fact, most of these objections related *not* to the Rule 23(a) requirement of commonality but to the ultimate merits of the case and "thus should properly be addressed by a jury considering the merits" rather than a judge considering class certification. *See id.* We agree.[2] We further conclude, as explained in more detail below, that it was within the district court's discretion to find that the com-

---

[2]Of course, we recognize that courts are not only "at liberty to" but *must* "consider evidence which goes to the requirements of Rule 23 [at the class certification stage] even [if] the evidence may also relate to the underlying merits of the case." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992). If the district court had rejected Wal-Mart's arguments regarding commonality solely because they overlapped with "merits issues," that would have been error. However, as we explain in the following sections, the district court did not do this but, instead, conducted a "rigorous analysis" of the conflicting evidence presented on the commonality question and ultimately concluded that the commonality prerequisite was satisfied. *See Falcon*, 457 U.S. at 161; *Hanon*, 976 F.2d at 509.

monality prerequisite to class certification was satisfied. *See* Fed. R. Civ. P. 23(a)(2).

### a. *"Significant Proof" of a Corporate Policy of Discrimination*

**[3]** Plaintiffs presented four categories of evidence: (1) facts supporting the existence of company-wide policies and practices; (2) expert opinions supporting the existence of company-wide policies and practices; and (3) expert statistical evidence of class-wide gender disparities attributable to discrimination; and (4) anecdotal evidence from class members around the country of discriminatory attitudes held or tolerated by management. *See Dukes I*, 222 F.R.D. at 145. Wal-Mart contends that this evidence is not sufficient to raise an inference of discrimination.

### (1) Factual Evidence

Plaintiffs presented evidence of: (1) uniform personnel and management structure across stores; (2) Wal-Mart headquarters's extensive oversight of store operations, company-wide policies governing pay and promotion decisions, and a strong, centralized corporate culture; (3) consistent gender-related disparities in every domestic region of the company. Such evidence supports Plaintiffs' contention that Wal-Mart operates a highly centralized company that promotes policies common to all stores and maintains a single system of oversight. Wal-Mart does not challenge this evidence.

### (2) Expert Opinion

Plaintiffs presented evidence from Dr. William Bielby, a sociologist, to interpret and explain the facts that suggest that Wal-Mart has and promotes a strong corporate culture — a culture that may include gender stereotyping. Dr. Bielby based his opinion on, among other things, Wal-Mart managers' deposition testimony; organizational charts; correspon-

dence, memos, reports, and presentations relating to personnel policy and practice, diversity, and equal employment opportunity issues; documents describing the culture and history of the company; and a large body of social science research on organizational policy and practice and on workplace bias.

Dr. Bielby testified that by employing a "social framework analysis,"[3] he examined the distinctive features of Wal-Mart's policies and practices and evaluated them "against what social science shows to be factors that create and sustain bias and those that minimize bias." In Dr. Bielby's opinion, "social science research demonstrates that gender stereotypes are especially likely to influence personnel decisions when they are based on subjective factors, because substantial decision-maker discretion tends to allow people to 'seek out and retain stereotyping-confirming information and ignore or minimize information that defies stereotypes.' " *Dukes I*, 222 F.R.D. at 154. Dr. Bielby concluded: (1) that Wal-Mart's centralized coordination, reinforced by a strong organizational culture, sustains uniformity in personnel policy and practice; (2) that there are significant deficiencies in Wal-Mart's equal employment policies and practices; and (3) that Wal-Mart's personnel policies and practices make pay and promotion decisions vulnerable to gender bias. *See id.*

Wal-Mart challenges Dr. Bielby's third conclusion as vague and imprecise because he concluded that Wal-Mart is "vulnerable" to bias or gender stereotyping but failed to identify a specific discriminatory policy at Wal-Mart. Specifically, Wal-Mart contends that Dr. Bielby's testimony does not meet the standards for expert testimony set forth in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.* ("*Daubert I*"), 509 U.S. 579 (1993), which held that a trial

---

[3]For a description of the "social framework analysis," see John Monahan and Larry Walker, *Social Science in the Law: Cases and Materials* (4th ed. 1998).

court must act as a "gatekeeper" in determining whether to admit or exclude expert evidence.

Wal-Mart made an identical argument to the district court and the district court properly rejected it. Wal-Mart did not (and does not) challenge Dr. Bielby's methodology or contend that his findings lack relevance because they "do[ ] not relate to any issue in the case," *Daubert*, 509 U.S. at 591, but challenges *only* whether certain inferences can be persuasively drawn from his data. Because *Daubert* does not require a court to admit or exclude evidence based on its persuasiveness, but rather, requires a court to admit or exclude evidence based on its scientific reliability and relevance, *id.* at 587-90 (evidence is relevant if it has " 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence' " (citing Fed. R. Evid. 401), and relevance standard "is a liberal one"), testing Dr. Bielby's testimony for "*Daubert* reliability" would not have addressed Wal-Mart's objections. It would have simply revealed what Wal-Mart itself has admitted and courts have long accepted: that properly analyzed social science data, like that offered by Dr. Bielby, may add probative value to plaintiffs' class action claims. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 235-36, 255, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989) (considering similar evidence offered by expert social psychologist).

Accordingly, Wal-Mart's contention that the district court was required to subject Dr. Bielby's testimony to the *Daubert* test, simply because the conclusion he reached seemed unpersuasive absent certain corroborating evidence, is misplaced. *See Daubert*, 490 U.S. at 595 ("The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate."). While a *jury* may ultimately agree with Wal-Mart that, in the absence of a specific discriminatory policy promulgated by Wal-Mart, it is hard to believe, based solely on Dr. Bielby's social science analysis, that Wal-Mart engaged in actual gender discrimination, that question must

be left to the merits stage of the litigation. At the class certification stage, it is enough that Dr. Bielby presented properly-analyzed, scientifically reliable evidence tending to show that a common question of fact — i.e., "Does Wal-Mart's policy of decentralized, subjective employment decision making operate to discriminate against female employees?" — exists with respect to all members of the class.[4] This he did and, thus, we find no error in the district court's acceptance of Dr. Bielby's evidence to support its finding of commonality.

### (3) Statistical Evidence

It is well-established that commonality may be established by raising an inference of class-wide discrimination through the use of statistical analysis. *See Caridad*, 191 F.3d at 292, *overruled on other grounds by In re IPO*, 471 F.3d at 39-42; *see also Stastny v. S. Bell Tel. & Tel. Co.*, 628 F.2d 267, 278 (4th Cir. 1980) (recognizing that statistical data showing com-

---

[4]As discussed further *infra* Part II.A.2.b, this court and many others have held that "delegation to supervisors, pursuant to company-wide policies, of discretionary authority without sufficient oversight . . . gives rise to common questions of fact warranting certification of the proposed class." *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 286 (2d Cir. 1999), *overruled on other grounds by In re Initial Public Offering Sec. Litig. ("IPO")*, 471 F.3d 24, 39-42 (2d Cir. 2006). *See, e.g., id.*; *Staton v. Boeing Co.*, 327 F.3d 938, 955 (9th Cir. 2003) (rejecting argument that "decisionmaking at Boeing is too decentralized to permit a class that combines plaintiffs from disparate locales"); *Shipes v. Trinity Indus.*, 987 F.2d 311, 316 (5th Cir. 1993) (upholding commonality finding where all of company's plants "utilized the same subjective criteria in making personnel decisions"); *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1557 (11th Cir. 1986) (holding that "[a]llegations of similar discriminatory employment practices, such as . . . [the] use of entirely subjective personnel processes that operated to discriminate, would satisfy the commonality and typicality requirements of Rule 23(a)" (quoting *Carpenter v. Stephen F. Austin State Univ.*, 706 F.2d 608, 617 (5th Cir. 1983)); *Segar v. Smith*, 738 F.2d 1249, 1276 (D.C. Cir. 1984) (explaining that "subjective criteria may well serve as a veil of seeming legitimacy behind which illegal discrimination is operating").

parable disparities experienced by protected employees may raise an inference of a policy or practice of discrimination).

Dr. Richard Drogin, Plaintiffs' statistician, analyzed data at a regional level. He ran separate regression analyses for each of the forty-one regions[5] containing Wal-Mart stores.[6] He concluded that "there are statistically significant disparities between men and women at Wal-Mart in terms of compensation and promotions, that these disparities are wide-spread across regions, and that they can be explained only by gender discrimination." *Dukes I*, 222 F.R.D. at 154. Dr. Marc Bendick, Plaintiffs' labor economics expert, conducted a "benchmarking" study comparing Wal-Mart with twenty of its competitors and concluded that Wal-Mart promotes a smaller percentage of women than its competitors.[7] *See id.*

---

[5]Each region contains approximately 80 to 85 stores.

[6]Regression analyses, in general terms, provide estimates of the effect of independent variables on a single dependent variable. *See Hemmings v. Tidyman's, Inc.*, 285 F.3d 1174, 1183-84 & n.9 (9th Cir. 2002). The purpose of this methodology is to estimate the extent to which a particular independent variable (in this case, gender) has influenced the dependent variables of compensation and promotion. *See id.*; *see also Rudebusch v. Hughes*, 313 F.3d 506, 511-12 (9th Cir. 2002). As long as the analyses include enough relevant non-discriminatory independent variables (e.g., education, experience, performance, etc.), the results will indicate whether any salary disparities are attributable to gender (thereby raising an inference of discrimination) or whether the disparities are attributable to other factors (and thereby refuting such an inference). *See Hemmings*, 285 F.3d at 1183-84 & n.9; *see also EEOC v. Gen. Tel. Co. of Nw., Inc.*, 885 F.2d 575, 577 n.3 (9th Cir. 1989) ("A regression analysis is a common statistical tool . . . designed to isolate the influence of one particular factor — [e.g.,] sex — on a dependent variable — [e.g.,] salary." (citation omitted)).

[7]Specifically, Dr. Bendick compared, or "benchmarked," Wal-Mart against twenty other similar general merchandise retailers by comparing workforce data provided by the companies to the Equal Employment Opportunity Commission ("EEOC"). *Dukes I*, 222 F.R.D. at 164. Dr. Bendick analyzed the data to determine the extent to which women in the relevant market sought promotion, so that an inference could be made that roughly the same percentage of women would have sought promotion at

Wal-Mart challenges Dr. Drogin's findings and faults his decision to conduct his research on the regional level, rather than analyze the data store-by-store. However, the proper test of whether workforce statistics should be viewed at the macro (regional) or micro (store or sub-store) level depends largely on the similarity of the employment practices and the interchange of employees at the various facilities. *See Kirkland v. New York State Dept. of Corr. Servs.*, 520 F.2d 420, 425 (2d Cir. 1975) (recognizing that the focus of analysis depends on nature of defendant's employment practices); 2 Barbara Lindemann & Paul Grossman, Employment Discrimination Law 1598, 1723 (3d ed. 1996).

Here, Dr. Drogin explained that a store-by-store analysis would not capture: (1) the effect of district, regional, and company-wide control over Wal-Mart's uniform compensation policies and procedures; (2) the dissemination of Wal-Mart's uniform compensation policies and procedures resulting from the frequent movement of store managers; or (3) Wal-Mart's strong corporate culture. Because Dr. Drogin provided a reasonable explanation for conducting his research at the regional level, the district court did not abuse its discretion when it credited Dr. Drogin's analysis and concluded that his analysis supported Plaintiffs' contention that Wal-Mart's corporate structure and policies led to a "pattern or practice" of discrimination.

Wal-Mart also contends that the district court erred by not finding Wal-Mart's statistical evidence *more* probative than Plaintiffs' evidence because, according to Wal-Mart, its analysis was conducted store-by-store. However, contrary to Wal-

---

Wal-Mart if given the opportunity. *See id.* As Dr. Bendick explained, "The logic in benchmarking is that, if retail chains comparable to Wal-Mart are successfully employing women at some rate, then women are presumably available, interested, and qualified to hold comparable positions at Wal-Mart at a similar rate." *See id.*

Mart's characterization of its analysis, its research was not conducted at the individual store level. Dr. Joan Haworth, Wal-Mart's expert, did not conduct a store-by-store analysis; instead she reviewed data at the *sub-store* level by comparing departments to analyze the pay differential between male and female hourly employees.[8] Moreover, our job on this appeal is to determine whether the district court *abused its discretion* in finding that, based on all the evidence presented, there existed common questions of fact sufficient to justify class certification. *See Armstrong*, 275 F.3d at 867; *Free Speech Coalition*, 408 F.3d at 618. Our job is *not* to re-examine the relative probativeness of the commonality evidence ourselves. Thus, even if we were to find, based on an independent review of the record, that Wal-Mart's statistical evidence was more persuasive than Plaintiffs' — which we do not, in any event — this alone would not allow us to find that the district court improperly relied on Dr. Drogin's testimony as a valid component of its commonality analysis or that the district court erred in its ultimate conclusion that the commonality prerequisite was satisfied.

Because the district court reasonably concluded that Dr. Drogin's regional analysis was probative and based on well-established scientific principles, because Wal-Mart provided little or no proper legal or factual challenge to it,[9] and because the district court was within its discretion when it found that Dr. Hayworth's evidence — which was stricken for failing to satisfy the standards of Federal Rules of Evidence 702 and 703[10]

---

[8]This means that Dr. Haworth ran separate regression analyses for: (1) each of the specialty departments in the store, (2) each grocery department in the store, and (3) the store's remaining departments. She did not run regression analyses to examine pay differential between male and female salaried employees.

[9]For example, although Wal-Mart maintains that the district court erred by not requiring Dr. Drogin to perform a "Chow test" to determine whether data could be properly aggregated, we have not found a single case suggesting or requiring use of such a test.

[10]In addition to her sub-store analysis, Dr. Haworth conducted a survey of store managers. After reviewing the survey and its methodology, the

— did not undermine or contradict Dr. Drogin's evidence (as Wal-Mart insisted), the district court did not abuse its discretion when it relied on Dr. Drogin's use and interpretation of statistical data as a valid component of its commonality analysis.

### (4) Anecdotal Evidence

Circumstantial and anecdotal evidence of discrimination is commonly used in Title VII "pattern and practice" cases to bolster statistical proof by bringing "the cold numbers convincingly to life." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 339 (1977); *see also Rudebusch*, 313 F.3d at 517. Wal-Mart contends that the district court erred by concluding that the anecdotal evidence, presented by Plaintiffs in the form of 120 declarations, supported a finding of commonality.[11] Wal-Mart maintains that the declarations depict a handful of "widely divergent" events that cannot be deemed probative or representative of discrimination in pay or management-track promotions.

In their declarations, the potential class members testified to being paid less than similarly situated men, being denied or delayed in receiving promotions in a disproportionate manner

district court concluded that the store manager survey was biased both "on its face" and in the way that it was conducted. *Dukes II*, 222 F.R.D. at 196-97 (noting that the survey's results "are not the 'product of reliable principles and methods,' and therefore are not the type of evidence that would be 'reasonably relied upon by experts' " (quoting Fed. R. Evid. 702, 703)). Dr. Haworth's disaggregated analysis created pools too small to yield any meaningful results. Wal-Mart has not appealed this issue. Accordingly, this evidence is not properly before us. *See Kohler v. Inter-Tel Tech.*, 244 F.3d 1167, 1179 n.8 (9th Cir. 2001) (recognizing that appellant waived a claim by failing to raise it in her briefs).

[11]Plaintiffs submitted declarations from each of the class representatives, as well as 114 declarations from putative class members around the country. *See Dukes I*, 222 F.R.D. at 165.

when compared with similarly situated men, working in an atmosphere with a strong corporate culture of discrimination, and being subjected to various individual sexist acts. The district court credited this evidence.

Wal-Mart contends that the district court erred because the 120 declarations cannot sufficiently represent a class of 1.5 million. However, we find no authority requiring or even suggesting that a plaintiff class submit a statistically significant number of declarations for such evidence to have any value. Further, the district court did not state that this anecdotal evidence provided sufficient proof to *establish* commonality by itself, but rather noted that such evidence provides *support* for Plaintiffs' contention that commonality is present. *See Dukes I*, 222 F.R.D. at 166 ("This anecdotal evidence, in combination with the other evidence previously discussed, further supports an inference that [Wal-Mart's] policies and procedures have the effect of discriminating against Plaintiffs in a common manner."). Because the declarations raise an inference of common discriminatory experiences and are consistent with Plaintiffs' statistical evidence, the district court did not abuse its discretion when it credited Plaintiffs' anecdotal evidence.

### b. *Subjective Decision-Making*

As discussed above, the district court found substantial evidence suggesting common pay and promotion policies among Wal-Mart's many stores. *See Dukes I*, 222 F.R.D. at 149. The court also reasoned that Wal-Mart's decision to permit its managers to utilize subjectivity in interpreting those policies offers additional support for a commonality finding. *See id*. Relying on *Sperling v. Hoffman-LaRoche, Inc.*, 924 F. Supp. 1346 (D.N.J. 1996), Wal-Mart challenges the latter conclusion, contending that managers' discretionary authority does not support a finding of commonality because "[d]ecentralized, discretionary decisionmaking is not inherently discriminatory."

It is well-established that subjective decision-making is a "ready mechanism for discrimination" and that courts should scrutinize it carefully. *Sengupta v. Morrison-Knudsen Co.*, 804 F.2d 1072, 1075 (9th Cir. 1986). Wal-Mart is correct that discretionary decision-making *by itself* is insufficient to meet Plaintiffs' burden of proof. The district court recognized this, noting that managerial discretion is but one of *several* factors that supported a finding of commonality. *See Dukes I*, 222 F.R.D. at 148-50 ("And while the presence of excessive subjectivity, alone, does not necessarily create a common question of fact, where, as here, such subjectivity is part of a consistent corporate policy and supported by other evidence giving rise to an inference of discrimination, courts have not hesitated to find that commonality is satisfied."). Wal-Mart is incorrect, however, that decentralized, subjective decision-making cannot *contribute* to an inference of discrimination. Indeed, courts from around the country have found "[a]llegations of similar discriminatory employment practices, such as the use of entirely subjective personnel processes that operate to discriminate, [sufficient to] satisfy the commonality and typicality requirements of Rule 23(a)." *Shipes*, 987 F.2d at 316; *see also supra* note 4 and cases cited therein.

Plaintiffs produced substantial evidence of Wal-Mart's centralized company culture and policies, *see Dukes I*, 222 F.R.D. at 151-54, thus providing a nexus between the subjective decision-making and the considerable statistical evidence demonstrating a pattern of discriminatory pay and promotions for female employees, *see id.* at 154-65; *see also Reid v. Lockheed Martin Aeronautics Co.*, 205 F.R.D. 655, 670-72 (N.D. Ga. 2001) (recognizing that subjective decision-making may give rise to an inference of discrimination where there is evidence to provide a nexus between the subjective decision-making and discrimination). Therefore, for the reasons stated above, we find that the district court did not abuse its discretion when it held that Wal-Mart's subjective decision-making policy raises an inference of discrimination, and provides sup-

port for Plaintiffs' contention that commonality exists among possible class members.

### c.    *Conclusion*

**[4]** Plaintiffs' factual evidence, expert opinions, statistical evidence, and anecdotal evidence demonstrate that Wal-Mart's female employees nationwide were subjected to a *single set of corporate policies* (not merely a number of independent discriminatory acts) that may have worked to unlawfully discriminate against them in violation of Title VII. Evidence of Wal-Mart's subjective decision making policies provide further evidence of a common practice of discrimination. Many other courts have reached the same conclusion based on similar evidence. *See, e.g., Caridad*, 191 F.3d at 286, *overruled on other grounds by In re IPO*, 471 F.3d at 39-42; *Staton*, 327 F.3d at 955; *Shipes*, 987 F.2d at 316; *Cox*, 784 F.2d at 1557; *Segar*, 738 F.2d at 1276. Accordingly, we conclude that the district court did not abuse its discretion in holding that the "commonality" prerequisite to class certification was satisfied.

### 3.    Typicality

As an initial matter, Plaintiffs contend that Wal-Mart has waived a challenge to the district court's typicality finding by failing to offer specific objections to the district court's typicality finding. However, because Wal-Mart refers, somewhat obliquely, to the typicality factor in its opening brief and because typicality and commonality are similar and tend to merge, *see Falcon*, 457 at 157 n.13, we conclude that Wal-Mart did not waive its opportunity to challenge the district court's findings with regard to typicality.[12] Thus, although

---

[12]Although the "commonality and typicality requirements of Rule 23(a) tend to merge," *see Falcon*, 457 U.S. at 157 n.13, each factor serves a discrete purpose. Commonality examines the relationship of facts and legal issues common to class members, while typicality focuses on the relationship of facts and issues between the class and its representatives. *See* 1 Newberg on Class Actions, § 3:13 at 317.

Wal-Mart did not raise a specific challenge, it nevertheless raised a general objection to the district court's conclusion that Plaintiffs' evidence satisfies the typicality requirement. As discussed below, to satisfy the typicality prerequisite, Plaintiffs must demonstrate that their claims and their class representatives are sufficiently typical of the class.

### a. *Plaintiffs' Claims Are Sufficiently Typical*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties be typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). We stated in *Hanlon* that "[u]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." 150 F.3d at 1020. Some degree of individuality is to be expected in all cases, but that specificity does not necessarily defeat typicality. *See Staton*, 327 F.3d at 957.

**[5]** Thus, we must consider whether the injury allegedly suffered by the named plaintiffs and the rest of the class resulted from the same allegedly discriminatory practice. *See id*. We agree with the district court that it did. Even though individual employees in different stores with different managers may have received different levels of pay or may have been denied promotion or promoted at different rates, because the discrimination they allegedly suffered occurred through an alleged common practice — e.g., excessively subjective decision-making in a corporate culture of uniformity and gender stereotyping — their claims are sufficiently typical to satisfy Rule 23(a)(3).

### b. *Plaintiffs' Representatives Are Sufficiently Typical of the Class*

Typicality requires that the named plaintiffs be members of the class they represent. *See Falcon*, 457 U.S. at 156. There is no dispute that the class representatives are "typical" of the

hourly class members, because almost all of the class representatives hold hourly positions. Instead, Wal-Mart contends that the class representatives are not typical of all female in-store managers because only one of six class representative holds a salaried management position, and she holds a somewhat low-level position.

**[6]** However, because all female employees faced the same alleged discrimination, the lack of a class representative for each management category does not undermine Plaintiffs' certification goal. *See Hartman v. Duffey*, 19 F.3d 1459, 1471 (D.C. Cir. 1994) (recognizing that an employee can challenge discrimination in "different job categories where the primary practices used to discriminate in the different categories are themselves similar. While it may be prudent to have the class divided into sub-classes represented by a named plaintiff from each of the differing job categories, it would not be necessary to the validity of the class certification to do so."); *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562 (8th Cir. 1982) (holding that "[t]ypicality is not defeated because of the varied promotional opportunities at issue, or the differing qualifications of plaintiffs and class members").

**[7]** In addition, because the range of managers in the proposed class is limited to those working in Wal-Mart's stores, it is not a very broad class, and a named plaintiff occupying a lower-level, salaried, in-store management position is sufficient to satisfy the "permissive" typicality requirement. *Staton*, 327 F.3d at 957 (recognizing that "[u]nder the rule's permissive standards," plaintiffs are not required to offer a class representative for each type of discrimination claim alleged (quoting *Hanlon*, 150 F.3d at 1020)).

**[8]** Because Plaintiffs' claims and Plaintiffs' representatives are sufficiently typical of the class, the district court acted within its discretion when it found that Plaintiffs satisfied the typicality prerequisite.

### 4. Adequate Representation

**[9]** Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This factor requires: (1) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by qualified and competent counsel. *See Hanlon*, 150 F.3d at 1020; *see also Molski*, 318 F.3d at 955.

**[10]** Before the district court, Wal-Mart argued that Plaintiffs cannot satisfy this factor because of a conflict of interest between female in-store managers who are both plaintiff class members and decision-making agents of Wal-Mart. Relying on *Staton*, the district court recognized that courts need not deny certification of an employment class simply because the class includes both supervisory and non-supervisory employees. *See Dukes I*, 222 F.R.D. at 168; *see also Staton*, 327 F.3d at 958-59. We agree. Finally, because Wal-Mart does not challenge the district court's finding that Plaintiffs' class representatives and counsel are adequate, we need not analyze this factor.

### 5. Conclusion

**[11]** Based on the evidence before it, which the district court rigorously examined, *see Falcon*, 457 U.S. at 161; *Chamberlain v. Ford Motor Co.*, 402 F.3d 952, 962 (9th Cir. 2005), we conclude that the district court did not abuse its discretion when it found that the Rule 23(a) elements were satisfied.

### B. *Rule 23(b)*

**[12]** As mentioned earlier, Plaintiffs moved to certify the class under Rule 23(b)(2), which requires that plaintiffs show that "the party opposing the class has acted or refused to act

on grounds generally applicable to the class, thereby making appropriate final injunctive relief . . . with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).**¹³** The district court agreed with Plaintiffs. *See Dukes I*, 222 F.R.D. at 170 ("Resolution of this issue is governed by *Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003), which holds that (b)(2) class actions can include claims for monetary damages so long as such damages are not the 'predominant' relief sought, but instead are 'secondary to the primary claim for injunctive or declaratory relief.' "). Wal-Mart contends that the district court merely "paid lip service" to Rule 23(b)(2) and erred in certifying the class under Rule 23(b)(2) because claims for monetary relief predominate over claims for injunctive and declaratory relief.

   **[13]** Rule 23(b)(2) is not appropriate for all classes and "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Fed. R. Civ. P. 23(b)(2), Adv. Comm. Notes to 1966 amend., 39 F.R.D. 69, 102; *see also Zinser*, 253 F.3d at 1195 ("Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive."). In *Molski* we refused to adopt a bright-line rule distinguishing between incidental and nonincidental damages for the purposes of determining predominance because such a rule "would nullify the discretion vested in the district courts through Rule 23." *Molski*, 318 F.3d at 950. Instead, we examine the specific facts and circumstances of each case, focusing predominantly on the plaintiffs' intent in bringing the suit. *See id.*; *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 860 (9th Cir. 2001); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1240 n.3 (9th Cir. 1998). At a minimum, however, we must satisfy ourselves that: "(1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunc-

---

**¹³**The purported class need only satisfy one of Rule 23(b)'s prongs to be sustainable. *See Zinser*, 253 F.3d at 1186.

tive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits." *Robinson*, 267 F.3d at 164, *quoted with approval in Molski*, 318 F.3d at 950 n.15.

### 1. Wal-Mart's "Unrebutted" Evidence Does Not Undermine Plaintiffs' Claim That Injunctive and Declaratory Relief Predominate

Wal-Mart first asserts that the district court "failed to even evaluate" Rule 23(b)'s requirement that the challenged conduct be generally applicable to the class. Wal-Mart maintains that its "unrebutted" statistics demonstrate that there is no evidence of pervasive discrimination that would justify injunctive relief and that, therefore, the "challenged conduct" does not affect all members. However, Wal-Mart's contention is not persuasive. As explained above, Wal-Mart's evidence *was* rebutted by Plaintiffs to the extent that Plaintiffs' evidence and theories remain viable at this pre-merits analysis stage. Further, the issue before us is whether Plaintiffs' primary goal in bringing this action is to obtain injunctive relief; not whether Plaintiffs will ultimately prevail. *See Molski*, 318 F.3d at 950. Consequently, Wal-Mart cannot derive support from this argument.

### 2. The Size of Plaintiffs' Damages Request Does Not Undermine Plaintiffs' Claim That Injunctive and Declaratory Relief Predominate

[14] Wal-Mart contends that monetary claims necessarily predominate because this case involves claims that may amount to billions of dollars. However, such a large amount is principally a function of Wal-Mart's size, and the predominance test turns on the *primary goal* of the litigation — not the theoretical or possible size of the damage award. As the district court stated,

> [F]ocusing on the potential size of a punitive damage award would have the perverse effect of making it

more difficult to certify a class the more egregious the defendant's conduct or the larger the defendant. Such a result hardly squares with the remedial purposes of Title VII.

*Dukes I*, 222 F.R.D. at 171. Because Wal-Mart has not shown that the size of the monetary request undermines Plaintiffs' claim that injunctive and declaratory relief predominate, we find that Wal-Mart's argument fails.

### 3. A Request for Backpay Does Not Undermine Plaintiffs' Claim That Injunctive and Declaratory Relief Predominate

Wal-Mart asserts that Plaintiffs' request for backpay weighs against certification because it proves that claims for monetary relief predominate. The district court reasoned that backpay "is recoverable as an equitable, make-whole remedy in employment class actions notwithstanding its monetary nature." *Dukes I*, 222 F.R.D. at 170. Wal-Mart contends that the district court erroneously deemed backpay "equitable" and erred by failing to recognize that backpay, whether "equitable" or not, is still a form of monetary relief.

While the district court was correct in labeling back pay as an equitable remedy available under Title VII, *see* 42 U.S.C. § 1981a(a) (referencing 42 U.S.C. § 2000e-5(g)), any suggestion that back pay's status as an equitable remedy somehow prevents it from *also* being a form of monetary relief for purposes of Rule 23(b)(2) is incorrect. Back pay is certainly not of an "injunctive nature or of a corresponding declaratory nature," Fed. R. Civ. Proc. 23(b)(2), advisory committee's notes, and thus Plaintiffs' request for back pay weighs *against* certification under Rule 23(b)(2), its equitable nature notwithstanding.

That a request for back pay weighs against Rule 23(b)(2) certification, however, does not mean that certification under

this rule is improper whenever back pay is requested. If it did, then the principal category of cases contemplated by the advisory committee as being certifiable under Rule 23(b)(2) — i.e., "actions in the civil-rights field where a party is charged with discriminating unlawfully against a class," Fed. R. Civ. Proc. 23(b)(2), advisory committee's notes — would no longer be eligible for (b)(2) certification unless the class members agreed to forego the back pay remedy Congress specifically made available to discrimination victims under Title VII. This non-sensical result would not only thwart legislative intent, but it would also put discrimination victims to the Hobson's choice of having to settle for only a partial remedy in order to proceed as a class action or having to bear the enormous costs of an individual lawsuit in order to receive the make-whole "injunction plus back pay" remedy authorized by Title VII. It is unlikely the Congress that approved both Rule 23(b)(2) and 42 U.S.C. § 1981a intended to put discrimination victims to such a choice.

**[15]** Accordingly, while Plaintiffs' request for back pay *does* weigh against class certification under Rule 23(b)(2), the district court did not abuse its discretion when it concluded, like many courts before it, that this discrimination class action was certifiable under Rule 23(b)(2) notwithstanding Plaintiffs' prayer for back pay relief. *See, e.g.*, *Eubanks v. Billington*, 110 F.3d 87, 92 (D.C. Cir. 1997) ("[I]t is not uncommon in employment discrimination cases for the class . . . to seek monetary relief in the form of back pay or front pay," [in addition to injunctive or declaratory relief, and still be certified under Rule 23(b)(2)]"). As *Molski* requires, we are satisfied that, "even in the absence of a possible [back pay] recovery, reasonable plaintiffs would bring the suit to obtain" an injunction against Wal-Mart's discriminatory employment practices and that such injunctive relief "would be both reasonably necessary and appropriate [if] the plaintiffs . . . succeed on the merits." *Molski*, 318 F.3d at 950 n.15.

### 4. A Request for Punitive Damages Does Not Undermine Plaintiffs' Claim That Injunctive and Declaratory Relief Predominate

[16] While Plaintiffs do not ask for compensatory damages in this case beyond the back pay just discussed, they do seek punitive damages to punish Wal-Mart for its allegedly "reckless disregard of the rights of its women employees to equal employment opportunity, and to deter similar misconduct by Wal-Mart and other large retailers in the future." *Dukes I*, 222 F.R.D. at 170. Wal-Mart contends that Plaintiffs' request for punitive damages is "wholly inconsistent" with Rule 23(b)(2) certification. This view, however, has not been adopted by this circuit and, if adopted, would thwart congressional intent for the same reasons as discussed with respect to Plaintiffs' request for back pay.[14] Specifically, it would be non-sensical to prevent victims of particularly egregious discrimination from simultaneously proceeding as a class action under Rule 23(b)(2) — which was specifically designed to facilitate discrimination class actions — and seeking the punitive damages provided for under Title VII. *See* 42 U.S.C. § 1981a(a)(1). Therefore, we find that the district court acted within its discretion when it concluded that Plaintiffs' claims for punitive damages do not predominate over their claims for injunctive

---

[14]Wal-Mart cites to two cases, *Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 928-29 (9th Cir. 1982), and *Zinser*, 253 F.3d at 1195, for the proposition that this circuit will not certify a class action that involves punitive damages. However, *Williams* and *Zinser* do not support Wal-Mart's contention. Rather, this court merely held that it was not an abuse of discretion to deny class certification based on the specific facts presented in those cases. *See Williams*, 665 F.2d at 929 (holding that damages requests were not incidental to the request for injunctive relief where requested compensatory damages were not clearly compatible with class injunctive relief); *Zinser*, 253 F.3d at 1195 (finding that a request for medical monitoring claims against manufacturer of pacemaker cannot be categorized as primarily equitable or injunctive per se because many state courts have recognized that medical monitoring relief is appropriate only as an element of damages after independent proof of liability).

and declaratory relief. *See Molski*, 318 F.3d at 947-50; *Robinson*, 267 F.3d at 164 (recognizing that a district court may certify class under (b)(2) if it finds in its discretion that the positive weight or value of the injunctive relief sought is predominant even though punitive damages are claimed).

**[17]** In addition, the district court's order contains a provision to allow Plaintiffs to opt-out of claims for punitive damages. *See Dukes I*, 222 F.R.D. at 173 ("Accordingly, notice and an opportunity to opt-out shall be provided to the plaintiff class with respect to Plaintiffs' claim for punitive damages."). Although there is no absolute right of opt-out in a rule 23(b)(2) class, "even where monetary relief is sought and made available," other courts have recognized that district courts should consider the possibility of opt-out rights. *In re Monumental Life Ins. Co.*, 365 F.3d 408, 417 (5th Cir. 2004); *Jefferson v. Ingersoll Int'l, Inc.*, 195 F.3d 894, 898 (7th Cir. 1999) ; *see also Ticor Title Ins. Co., v. Brown*, 511 U.S. 117, 121 (1994) (suggesting that provisions allowing plaintiffs to opt-out of damages claims may be appropriate where plaintiffs move to certify a class bringing a claim for punitive damages). We note that a district court's discretion to include an opt-out provision is well-established. *See, e.g.*, *In re Monumental Life Ins. Co.*, 365 F.3d at 417 (noting that district courts have discretion to order notice and opt-out rights when certifying a Rule 23(b)(2) class); *Robinson*, 267 F.3d at 165-67 (recognizing that notice and opt-out can be afforded (b)(2) class members with respect to non-incidental damage claims); *Jefferson*, 195 F.3d at 898-99.

### 5. Class Certification May Not be Proper as to Class Members Who Were Not Wal-Mart Employees as of the Date Plaintiffs' Complaint Was Filed

Wal-Mart's final contention is that, because a substantial number of the putative class members no longer work for Wal-Mart — and, thus, no longer have standing to seek injunctive or declaratory relief — injunctive and declaratory

relief cannot possibly predominate over monetary relief for purposes of certifying this class under Rule 23(b)(2).

**[18]** We agree with Wal-Mart to this extent: those putative class members who were no longer Wal-Mart employees at the time Plaintiffs' complaint was filed do not have standing to pursue injunctive or declaratory relief. *See Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033 (9th Cir. 2006) (recognizing that former employees lack standing to seek injunctive relief because they "would not stand to benefit from an injunction requiring the anti-discriminatory policies [to cease] at [their] former place of work"); *Am. Civil Liberties Union of Nev. v. Lomax*, 471 F.3d 1010, 1015 (9th Cir. 2006) ("When evaluating whether [the standing] elements are present, we must look at the facts 'as they exist at the time the complaint was filed.' " (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n.4 (internal quotation marks omitted)). Under these circumstances, it is difficult to say that, "even in the absence of a possible monetary recovery, reasonable plaintiffs [who lack standing to seek injunctive or declaratory relief] would [nonetheless] bring th[is] suit to obtain the injunctive or declaratory relief sought." *Molski*, 318 F.3d at 950 n.15 (quoting *Robinson*, 267 F.3d at 164).

This does not mean that the entire class must fall. Those putative class members who were still Wal-Mart employees as of June 8, 2001 (when Plaintiffs' complaint was filed) *do* have standing to seek the injunctive and declaratory relief requested in the complaint, *see Lomax*, 471 F.3d at 1015, and we are satisfied that these putative class members would reasonably bring this suit to put an end to the practices they complain of "even in the absence of a possible monetary recovery." We are also satisfied that, if these plaintiffs ultimately succeed on the merits, an injunction or declaratory judgment preventing Wal-Mart from continuing to engage in unlawful gender-based employment discrimination "would be both reasonably necessary and appropriate." *Molski*, 318 F.3d at 950 n.15 (quoting *Robinson*, 267 F.3d at 164). Moreover,

for the reasons explained in Parts II.B.1-II.B.4, we are confident that the primary relief sought by these plaintiffs remains declaratory and injunctive in nature notwithstanding their request to also be "made whole" in a monetary sense to the full extent provided for under Title VII. Accordingly, class certification under Rule 23(b)(2) was appropriate at least as to these plaintiffs.

[19] We thus remand to the district court for a determination of the appropriate scope of the class in light of the above observation and in light of any evidence presented to it regarding which putative class members were still Wal-Mart employees as of June 8, 2001.

### III.   Class Action Can Proceed In a Way that is Both Manageable and In Accordance With Due Process

The parties agree that this is the largest class certified in history. The district court was cognizant of this when it concluded that the class size, although large, was not unmanageable. *See Dukes I*, 222 F.R.D. at 173. Indeed, the district court acknowledged that, "while courts possess wide discretion to flexibly respond to manageability issues that may arise during the course of a class action, *see, e.g.*, *Blackie v. Barrack*, 524 F.2d 891, 906, n.22 (9th Cir. 1975), this Court must be confident that such issues will not be of such a magnitude as to defy its ability to oversee this case in a responsible and reasonable manner." *Dukes I*, 222 F.R.D. at 173. After "giv[ing] these matters considerable thought and deliberation," the district court concluded that, with one minor exception,[15] "the size of the class would not present undue obstacles to managing" this class action. *Id.*

---

[15]This one exception related to Plaintiffs' promotion claim. The district court determined that it would be unmanageable to fashion a remedy for the subset of the class for whom objective applicant data did not exist. *See Dukes I*, 222 F.R.D. at 183. We agree with the district court's analysis and resolution of this issue.

To demonstrate the manageability of the class action, the district court outlined a trial plan based, in large part, on how other courts have handled similarly large and complex class action suits.[16] Wal-Mart and a number of amici[17] contend that at least some aspects of this trial plan violate their due process rights, as well as section 706(g)(2) of Title VII,[18] the Rules Enabling Act,[19] and the Supreme Court's decision in *Teamsters v. United States*, 431 U.S. 324 (1977).

---

[16]The trial plan described by the district court involved two stages. In Stage I, Plaintiffs would attempt to prove that Wal-Mart engaged in a pattern and practice of discrimination against the class via its company-wide employment policies. If Plaintiffs were successful in this regard, they would also attempt to prove an entitlement to punitive damages, which would require proof that Wal-Mart's pattern and practice of discrimination "was undertaken maliciously or recklessly in the face of a perceived risk that defendant's actions would violate federal law." *Dukes I*, 222 F.R.D. at 174. If Plaintiffs prevailed in Stage I, the case would move to Stage II, the remedy phase. The first task in Stage II would be to fashion class-wide injunctive relief. The second task would be to calculate and distribute the back pay award. As to Plaintiffs' promotional claim, a formula would be used to calculate the "lump sum" in back pay that Wal-Mart owes to the class (a procedure similar to that employed in *Domingo v. New England Fish Co.*, 727 F.2d 1429, 1444-45 (9th Cir. 1984)). As to Plaintiffs' equal pay claim, the court would examine Wal-Mart's employment records to determine which class members were victims of this form of discrimination (and how much in back pay each is owed) to determine a second "lump sum" owed by Wal-Mart. *Dukes I*, 222 F.R.D. at 174-186. A separate procedure would then be used to distribute these lump sums to those class members entitled to share in them — a stage in which Wal-Mart would no longer have an interest. *Id.* at 179 n.49.

[17]The panel was favored with an extraordinary variety of amicus briefs that were both thoughtful and helpful to the panel in its deliberations.

[18]This section says that "[n]o order of the court shall require . . . the payment to [a person] of any back pay, if such individual . . . was refused employment or advancement or was suspended or discharged for any reason other than [unlawful] discrimination" and that, "[o]n a claim in which an individual proves a violation under section 2000e-2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court . . . shall not award damages." Title VII, § 706(g)(2), *codified at* 42 U.S.C. § 2000e-5(g)(2).

[19]This statute says that the Federal Rules of Civil Procedure, including Rule 23 regarding class actions, "shall not abridge, enlarge or modify any substantive right. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." 28 U.S.C. § 2072.

At this pre-merits stage, we express no opinion regarding Wal-Mart's objections to the district court's tentative trial plan (or that trial plan itself), but simply note that, because there are a range of possibilities — which may or may not include the district court's proposed course of action — that would allow this class action to proceed in a manner that is both manageable and in accordance with due process, manageability concerns present no bar to class certification here.

For example, in *Hilao v. Estate of Ferdinand Marcos*, 103 F.3d 767, 782-87 (9th Cir. 1996), the district court employed the following procedure to determine the amount of compensatory damages due the plaintiffs in a large class action:[20]

In all, 10,059 claims were received. The district court ruled 518 of these claims to be facially invalid, leaving 9,541 claims. From these, a list of 137 claims was randomly selected by computer. This number of randomly selected claims was chosen on the basis of the testimony of James Dannemiller, an expert on statistics, who testified that the examination of a random sample of 137 claims would achieve "a 95 percent statistical probability that the same percentage determined to be valid among the examined claims would be applicable to the totality of claims filed." . . .

The district court then appointed Sol Schreiber as a special master (and a court-appointed expert under Rule 706 of the Federal Rules of Evidence). Schreiber supervised the taking of depositions . . . of the 137 randomly selected claimants. . . .

[20]*Hilao* was a 10,000+ plaintiff class action filed by Philippine nationals and their descendants who were allegedly victims of torture, summary execution, and "disappearance" at the hands of Ferdinand E. Marcos, the Philippines' former president.

Schreiber then reviewed the claim[s] . . . [and] rec-
ommended that 6 claims of the 137 in the sample be
found not valid. . . .

Schreiber then recommended the amount of damages
to be awarded to the 131 [remaining] claimants. . .
.

Based on his recommendation that 6 of the 137
claims in the random sample (4.37%) be rejected as
invalid, he recommended the application of a five-
per-cent invalidity rate to the remaining claims. . . .
He recommended that the award to the class be
determined by multiplying the number of valid
remaining claims . . . by the average award recom-
mended for the . . . claims . . . . By adding the rec-
ommended awards . . . , Schreiber arrived at a
recommendation for a total compensatory damage
award . . . .

A jury trial on compensatory damages was [then]
held . . . . Dannemiller testified that the selection of
the random sample met the standards of inferential
statistics, that the successful efforts to locate and
obtain testimony from the claimants in the random
sample "were of the highest standards" in his profes-
sion, that the procedures followed conformed to the
standards of inferential statistics, and that the injuries
of the random-sample claimants were representative
of the class as a whole. Testimony from the 137
random-sample claimants and their witnesses was
introduced. Schreiber testified as to his recommen-
dations, and his report was supplied to the jury. The
jury was instructed that it could accept, modify or
reject Schreiber's recommendations and that it could
independently, on the basis of the evidence of the
random-sample claimants, reach its own judgment as

to the actual damages of those claimants and of the aggregate damages suffered by the class as a whole.

The jury deliberated for five days before reaching a verdict. Contrary to the master's recommendations, the jury found against only two of the 137 claimants in the random sample. As to the sample claims, the jury generally adopted the master's recommendations, although it did not follow his recommendations in 46 instances. As to the claims of the remaining class members, the jury adopted the awards recommended by the master. The district court subsequently entered judgment for 135 of the 137 claimants in the sample in the amounts awarded by the jury, and for the remaining plaintiffs . . . in the amounts awarded by the jury, to be divided pro rata.

*Hilao*, 103 F.3d at 782-84 (footnotes omitted).

On appeal, the *Hilao* court was presented with some of the same objections to its trial plan as Wal-Mart presents here.[21] After a lengthy discussion, however, the *Hilao* court rejected these challenges and approved of the trial plan, addressing the due process issue as follows:

While the district court's methodology in determining valid claims is unorthodox, it can be justified by the extraordinarily unusual nature of this case. " 'Due process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria and Restaurant Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 895 . . . (1961). . . .

---

[21]For example, the defendant in *Hilao* argued that the trial plan "violated its rights to due process because 'individual questions apply to each subset of claims, *i.e.*, whether the action was justified, the degree of injury, proximate cause, etc.' " 103 F.3d at 785.

The interest of the [defendant] that is affected is at best an interest in not paying damages for any invalid claims. . . . The statistical method used by the district court obviously presents a somewhat greater risk of error in comparison to an adversarial adjudication of each claim, since the former method requires a probabilistic *prediction* (albeit an extremely accurate one) of how many of the total claims are invalid. . . . Hilao's interest in the use of the statistical method, on the other hand, is enormous, since adversarial resolution of each class member's claim would pose insurmountable practical hurdles. The "ancillary" interest of the judiciary in the procedure is obviously also substantial, since 9,541 individual adversarial determinations of claim validity would clog the docket of the district court for years. Under the balancing test set forth in *Mathews* [*v. Eldridge*, 424 U.S. 319 (1976),] and [*Connecticut v.*] *Doehr*[, 501 U.S. 1 (1991)], the procedure used by the district court did not violate due process.

*Hilao*, 103 F.3d at 786-87 (footnote omitted).

**[20]** Because we see no reason why a similar procedure to that used in *Hilao* could not be employed in this case,[22] we conclude that there exists at least one method of managing this large class action that, albeit somewhat imperfect, nonetheless protects the due process rights of all involved parties.[23]

---

[22]We note that this procedure would allow Wal-Mart to present individual defenses in the randomly selected "sample cases," thus revealing the approximate percentage of class members whose unequal pay or non-promotion was due to something *other* than gender discrimination. The "invalid claim rate" revealed by this process would, as it did in *Hilao*, come very close to the invalid claim rate one would expect to find among the entire class.

[23]We do not suggest that this is the *only* conceivable way in which this class action could lawfully progress. Indeed, the district court may want

Accordingly, we find no manageability-based reason to find this otherwise-certifiable class unsuited to class certification.

## CONCLUSION

For the reasons set forth above, we hold that the district court acted within its broad discretion in concluding that it would be better to handle this case as a class action instead of clogging the federal courts with innumerable individual suits litigating the same issues repeatedly. The district court did not abuse its discretion in finding the pleading requirements of Rule 23 satisfied, at least as to those Plaintiffs who were still Wal-Mart employees on June 8, 2001. Wal-Mart failed to point to any specific management problems that would render a class action impracticable in this case, and the district court has the discretion to modify or decertify the class should it become unmanageable. Although the size of this class action is large, mere size does not render a case unmanageable.

We deny Plaintiffs cross-appeal, because the district court did not abuse its discretion when it found that back pay for promotions may be limited to those Plaintiffs for whom proof

---

to consider whether a more limited "test case" procedure similar to that employed in *In re TMI Litig. Consol. Proceedings*, 927 F. Supp. 834, 837 & n.5 (M.D. Pa. 1996), would aid the parties in evaluating the strength of their respective claims.

And, of course, the option proposed by the district court may also remain viable; indeed, it appears that a number of circuits have approved of similar trial plans in discrimination cases. *See, e.g.*, *Segar*, 738 F.2d at 1291 (explaining why a similar trial plan did not violate § 706(g)(2) of Title VII and commenting that, "[i]f effective relief for the victims of discrimination necessarily entails the risk that a few nonvictims might also benefit from the relief, then the employer, as a proven discriminator, must bear that risk"); *see also Shipes*, 987 F.2d at 316-19; *Catlett v. Mo. Highway & Transp. Comm'n*, 828 F.2d 1260, 1266-67 (8th Cir. 1987). We point to the *Hilao* procedure above solely because this circuit has already considered and approved of that procedure in a decision we are bound to follow.

of qualification and interest exists. Finally, we must reiterate that our findings relate only to class action procedural questions; we neither analyze nor reach the merits of Plaintiffs' allegations of gender discrimination.

AFFIRMED.

KLEINFELD, Circuit Judge, dissenting:

I respectfully dissent. The majority's new opinion does not solve the problems of its previous opinion. Class action certification still violates Rule 23, likely deprives many women who have been discriminated against of the money they are entitled to, and deprives Wal-Mart of its constitutional rights to jury trial and due process of law.

Class actions may not be brought in federal court unless they satisfy, among other things, the criteria of Federal Rule of Civil Procedure 23(a):

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.[1]

These criteria are called, for short: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.[2] In the somewhat analogous case of *General Telephone Co. of*

---

[1]Fed. R. Civ. P. 23(a).

[2]*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1996); *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003).

*the Southwest v. Falcon*,[3] the Supreme Court held that class certification had been inappropriate, where a Mexican-American who was not promoted had been allowed to sue on behalf of all Mexican-American applicants for employment. The Court held that the Rule 23 requirements apply fully to Title VII class actions, and rejected the " 'tacit assumption' underlying the [rejected] across-the-board rule that 'all will be well for surely the plaintiff will win and manna will fall on all members of the class.' "[4]

In this case, the only one of the four Rule 23 requirements that is satisfied is "numerosity." In seeking to represent as large a class as imaginable, plaintiffs have destroyed their commonality, typicality, and adequacy of representation, as in many other attempted class certifications that have over-reached.[5]

This class lacks "commonality" because the questions "common to the class"[6] are insubstantial. The only common question plaintiffs identify with any precision is whether Wal-Mart's promotion criteria are "excessively subjective." This is not a commonality with any clear relationship to sex discrimination in pay, promotions or terminations. Plaintiffs' sociologist claims merely that a subjective system is "vulnerable" to sex discrimination. But the Supreme Court recognized in *Watson v. Fort Worth Bank & Trust* that, although disparate impact analysis may be usable in subjective criteria cases,

---

[3]457 U.S. 147 (1982).

[4]*Id.* at 161 (quoting *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122, 1127 (5th Cir. 1969) (Godbold, J., specially concurring)).

[5]*Cooper v. S. Co.*, 390 F.3d 695, 715 (11th Cir. 2004) ("Where, as here, class certification was sought by employees working in widely diverse job types, spread throughout different facilities and geographic locations, courts have frequently declined to certify classes.") (citations omitted); *see also Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565 (6th Cir. 2004); *Stastny v. So. Bell Tel. & Tel. Co.*, 628 F.2d 267 (4th Cir. 1980).

[6]Fed. R. Civ. P. 23(a)(2).

"leaving promotion decisions to the unchecked discretion of lower level supervisors should itself raise no inference of discriminatory conduct"[7] because "[i]t is self-evident that many jobs . . . require personal qualities that have never been considered amenable to standardized testing."[8] "Vulnerability" to sex discrimination is not sex discrimination.

Plaintiffs' only evidence of sex discrimination is that around 2/3 of Wal-Mart employees are female, but only about 1/3 of its managers are female. But as the Supreme Court recognized in *Watson*, "[i]t is entirely unrealistic to assume that unlawful discrimination is the sole cause of people failing to gravitate to jobs and employers in accord with the laws of chance."[9] Not everybody wants to be a Wal-Mart manager. Those women who want to be managers may find better opportunities elsewhere. Plaintiffs' statistics do not purport to compare women who want to be managers at Wal-Mart with men who want to be managers at Wal-Mart, just female and male employees, whether they want management jobs or not.

This class lacks "typicality" because "the claims or defenses of the representative parties" are not "typical of the claims or defenses of the class."[10] Plaintiffs must show "the existence of a class of persons who have suffered the same injury" as themselves.[11] There are seven named plaintiffs.[12] Here they are, with the gist of the claims they make in the complaint:

---

[7]487 U.S. 977, 990 (1988).

[8]*Id.* at 999.

[9]*Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 992 (1988).

[10]Fed. R. Civ. P. 23(a)(3); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1996).

[11]*Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 (1982).

[12]The plaintiffs' names add up to seven: Dukes, Surgeson, Arana, Williamson, Gunter, Kwapnoski, Cleo. The district court and the majority say there are six named plaintiffs. One not concerned with individual justice may not care about one woman more or less, but in our system we must and do.

| | |
|---|---|
| Betty Dukes | African American female promoted to manager, then demoted in retaliation for discrimination complaints. Did not apply for several slots filled by African American females, African American males, Hispanic female, Filipino male, and Caucasian male because she was discouraged by discrimination against women. |
| Patricia Surgeson | Sexually harassed, replaced by a male who got a better title and more money, denied management opportunities, quit. |
| Cleo Page | Quickly promoted to manager, but denied a department manager position after being told it's "a man's world." A "Caucasian female" got the department manager position. Page later got a different department manager position. But a "Caucasian male," a "Latina," and a "Caucasian female" got other management positions she sought and she got paid less than a "Caucasian male" with less seniority. |
| Chris Kwapnoski | Sought management positions given to less qualified men. Manager made sexist remarks. |
| Deborah Gunter | Sought management positions given to less experienced males. Males she trained were promoted instead of her. Never got a management position. Fired after complaining about discrimination and a reduction in her hours. |
| Karen Williamson | Sought management position but was never promoted, even though "quali- |

fied." Males got promotions that were not posted.

Edith Arana        African American woman. Sought management position but never promoted. Store manager told her he "did not want women." Fired after "falsely accused of 'stealing time' " in retaliation for her discrimination complaints.

"Typicality" exists only if these seven women's claims are "typical of the claims or defenses of the class."[13] They are not even typical with respect to each other, let alone with respect to the class of "[a]ll women employed at any Wal-Mart domestic retail store at any time since December 26, 1998 who have been or may be subjected to Wal-Mart's challenged pay and management track promotions policies and practices." Some of the seven named plaintiffs and members of the putative class work for Wal-Mart, some have quit, some have been fired. Some claim sex discrimination, some claim mixed motive race and sex discrimination, some appear to claim only race discrimination. Some claim retaliation, and some appear to claim unfairness but not discrimination. Some of the seven plead a prima facie case, some do not.

Nor are the defenses to the claims likely to be common even as to these seven, let alone all female employees. Some are likely to be vulnerable to defenses such as misconduct, some are not. For example, Wal-Mart's defense to Arana's claim might be that she really did steal time, or that Wal-Mart fired her because the manager concluded in good faith after reasonable investigation that she stole time. For Dukes, the obvious potential defense is that they did promote her to manager and hoped for the best, but she did not do well. For Kwapnoski, the defense may be no defense at all, just a

---

[13]Fed. R. Civ. P. 23(a)(3); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

money settlement and promotion. We cannot know how the individual cases may proceed, but we can easily tell from the complaint that they will be different from each other as to both the claims and the defenses. Whatever the "vulnerability" to sex discrimination of the "corporate culture" of this national corporation with no centralized system for promotion, the various Plaintiffs' claims and Wal-Mart's defenses against them do not resemble one another.[14]

The fourth requirement under Rule 23 is that the seven named plaintiffs "will fairly and adequately protect the interests of the class."[15] The majority opinion and the district court give this little attention, no doubt because everyone knows that the lawyers, being without real clients who can instruct them if a class is certified, will run the case as they choose. Based on their own descriptions of the wrongs done to them in the complaint, the interests of the seven named plaintiffs diverge from each other, as will the interests of other members of the class. Women who still work at Wal-Mart and who want promotions have an interest in the terms of an injunction. But an injunction and declaratory judgment cannot benefit women who have quit or been fired and do not want to return. For them, compensatory and punitive damages are what matter. Those who are managers, and many Wal-Marts have female store managers, have interests in preserving their own managerial flexibility under whatever injunction may issue, while those who are not and do not want to be managers may not share this concern. Those who face strong defenses, such as if they did indeed steal time or money, have a considerable interest in a fast, mass settlement, while those who have impressive performance records have an interest in pushing their individual cases to trial.

---

[14]*See Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 572-73 (6th Cir. 2004).

[15]Fed. R. Civ. P. 23(a)(4).

The class certification we are reviewing is pursuant to Federal Rule of Civil Procedure 23(b)(2). That is error because 23(b)(2) certification is only available when injunctive and declaratory relief "predominate."[16] Injunctive and declaratory relief cannot possibly "predominate" for the women who will benefit from neither, because they no longer work at Wal-Mart and have no desire to return. The majority now acknowledges that these class members lack standing to sue for declaratory and injunctive relief, yet leaves it to the district court to decide whether they can stay in the class. For the whole class, the complaint seeks punitive damages, and for a class this big, one would expect the claim to be in the billions of dollars, like a tobacco or oil spill case. (

It is risible to say that injunctive and declaratory relief "predominate," even for those who do have standing to seek such relief. The majority says punitive damages do not predominate because it would "thwart congressional intent" if a defendant guilty of egregious sex discrimination were not punished. That may be so, but it has nothing to do with whether the claim for declaratory and injunctive relief predominates. For anyone but the richest people in the world, billions of dollars are going to predominate over words and solemn commands and promises about how to behave in the future. What Wal-Mart cashier or stocker would care much about how the district court told Wal-Mart to run its business after getting enough cash to quit?

Even worse than the Rule 23 violations, the district court's management plan for this class action violates Wal-Mart's constitutional rights to due process and jury trial. The district court order establishes a first phase of the case in which a jury will determine liability (including liability for punitive damages and an injunction) on a class-wide basis, without adjudicating the merits of any class member's claim. Then in a

---

[16]*E.g.*, *Molski v. Gleich*, 318 F.3d 937, 949-50 (9th Cir. 2003); *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 411 (5th Cir. 1998).

second phase, a "special master" will determine Wal-Mart's total front and back pay for the women discriminated against on the basis of some unspecified generally applicable formula.[17]

Both phases of this plan are constitutionally defective because they are inadequately individualized.[18] There will never be an adjudication, let alone an adjudication by an Article III judge and a jury, to determine whether Wal-Mart owes any particular woman the money it will be required to pay, nor will any particular woman ever get a trial to establish how much she is owed. Wal-Mart will never get a chance, for example, to prove to a jury that Dukes was tried as a manager and did not perform well, or that Arana did indeed steal time or at least that after a good faith investigation Wal-Mart fired her for that nonpretextual reason. Under both the Seventh Amendment[19] and the statute applicable to punitive damages in Title VII cases,[20] Wal-Mart is entitled to trial by jury of these issues.

Nor is there a legitimate way for the jury or court to decide upon a punitive damages award, since the jury will never make a compensatory damages award. It is now firmly established that the Due Process Clause constrains punitive damages to a ratio of punitive damages to compensatory damages,[21]

---

[17]*Dukes v. Wal-Mart Stores, Inc.*, 222 F.R.D. 137, 180 (D. Cal. 2004).

[18]*See Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 355 (1998) ("[W]e hold that the Seventh Amendment provides a right to a jury trial on all issues pertinent to an award of statutory damages . . . including the amount itself."); *Cimino v. Raymark Industries, Inc.*, 151 F.3d 297, 311 (5th Cir. 1998) (finding Seventh Amendment and due process violations where district court's trial plan for class action did not allow individual determinations of liability and damages).

[19]*See Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 355 (1998).

[20]42 U.S.C. § 1981a(c)(1).

[21]*See State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408 (2003); *Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996); *White v. Ford Motor Co.*, 500 F.3d 963 (9th Cir. 2007); *Bans LLC v. ARCO Prods. Co.*, 405 F.3d 764 (9th Cir. 2005); *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020 (9th Cir. 2003).

and that the ratio can rarely exceed a nine to one ratio.[22] Yet compensatory damages will never be determined here. After the punitive damages have already been awarded, a special master will decide upon whatever lost pay may be awarded, by formula rather than examination of individual cases. We have explained that "in a multi-plaintiff, multi-defendant action, an approach that compares each plaintiff's individual compensatory damages with the punitive damages awards against each defendant more accurately reflects the true relationship between the harm for which a particular defendant is responsible, and the punitive damages assessed against that defendant."[23] In this case, a ratio analysis will not be possible because punitive damages will be unanchored to compensatory damages.[24]

In its first opinion, the majority explicitly approved of the district court's trial plan in the face of the Due Process deprivations. In this second opinion, the majority "express[es] no opinion regarding Wal-Mart's objections to the district court's" scheme and finds it sufficient to "note" that "there are a range of possibilities — which may or may not include the district court's proposed course of action — that would allow this class action to proceed in a manner that is both

---

[22]*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) ("[F]ew awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process."). *See also Bains LLC v. ARCO Prods. Co.*, 405 F.3d 764, 777 (9th Cir. 2005) *and Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1044 (9th Cir. 2003) (holding 7 to 1 ratio constitutional in discrimination case).

[23]*Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coalition of Life Activists*, 422 F.3d 949, 961 (9th Cir. 2005). Indeed, it is now clear that punitive damages cannot be awarded to one plaintiff in order to punish the defendant for harm caused to others. *Philip Morris USA v. Williams*, 127 S.Ct. 1057, 1063 (2007).

[24]*See White v. Ford Motor Co.*, 500 F.3d 963, 973-74 (9th Cir. 2007) (due process does not require jury instruction regarding constitutional ceiling for punitive damages provided court will have information necessary to conduct ratio analysis on appeal).

manageable and in accordance with due process." Wal-Mart has appealed precisely the unconstitutionality in the district court's order, so it is incumbent upon us to correct it.

The majority seeks cover under *Hilao v. Estate of Ferdinand Marcos*,[25] where we allowed a class action against the dictator of the Philippines for victims of disappearances, torture, and summary executions. Assuming that that case was correctly decided,[26] this one is distinguishable. The victims of sex discrimination by Wal-Mart can obtain individual counsel where they live and do not face the problems of proving injuries suffered in a foreign country. *Hilao* included a plan to have a "random sample of 137 claims" go to jury trial,[27] while in this case no individual cases will go to trial. And in *Hilao*, a jury award of compensatory damages would be made[28] and would provide the information necessary for the constitutionally required "ratio analysis."[29]

There are serious reasons for these rules constraining class actions. Class actions need special justification because they are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."[30] They are designed largely to solve an attorneys' fees problem. "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prose-

---

[25]103 F.3d 767, 782-87 (9th Cir. 1996).

[26]*Cf. Cimino v. Raymark Industries, Inc.*, 151 F.3d 297, 319 (5th Cir. 1998) (suggesting that *Hilao* is incorrect and stating that "we find ourselves in agreement with the thrust of the dissenting opinion there").

[27]*Hilao v. Estate of Marcos*, 103 F.3d 767, 782-84 (9th Cir. 1996).

[28]The special master first examined the sample cases, and made recommendations as to claim validity and damages awards to the jury, which made the final determination as to both. *Id.* at 783-84. No such procedure is suggested here.

[29]*See White v. Ford Motor Co.*, 500 F.3d 963, 973-74 (9th Cir. 2007).

[30]*Califano v. Yamasaki*, 442 U.S. 682, 700-701 (1979).

cuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."[31] That need does not pertain here. Much of the bar now earns a living by litigating sex discrimination claims. Many sex discrimination cases satisfy the three elements that make a contingent fee case worth accepting, good liability, high damages potential, and collectibility of a judgment, sweetened by the lagniappe of statutory attorneys fees awards.[32] These features of individual sex discrimination cases "eliminate financial barriers that might make individual lawsuits unlikely or infeasible,"[33] so women discriminated against by Wal-Mart do not need a class action. They can, with contingent fee agreements, afford to hire their own lawyers and control what the lawyers do for them.

Women employed by Wal-Mart who have suffered sex discrimination stand to lose a lot if this sex discrimination class action goes forward. All the members of the class will be bound by the judgment or settlement because, under Rule 23, the judgment "shall include" all class members, "whether or not favorable to the class."[34] What if the plaintiffs' class loses? Worse, for many women in the class, what if the plaintiffs win? Women who have suffered great loss because of sex discrimination will have to share the punitive damages award with many women who did not. Women entitled to considerable compensatory damages in addition to lost pay will be deprived of them. Women who have left Wal-Mart will get injunctive and declaratory relief of no value to them, while new female Wal-Mart employees will benefit from the injustice done to other women. If the settlement is mostly words

---

[31]*Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997) (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (1997)).

[32]42 U.S.C. § 2000e-5(k).

[33]*Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 420 (5th Cir. 1998).

[34]Fed. R. Civ. P. 23(c)(3).

for the women and money for the lawyers, a realistic possibility, it will be a pyrrhic victory indeed.

A lawyer representing a class is in practical effect a lawyer without a client. Clients as principals compel their lawyers as agents to serve their interests. Without individual clients to control what they do, the lawyers have a powerful financial incentive to settle the case on terms favorable to themselves, but not necessarily favorable to their unknown clients with varying individual circumstances that are unknown to their purported lawyers.

The absence of any real clients to control them leaves the lawyers free to pursue their own earnestly held views about the public good generally. They will doubtless have their own views, which they will try to get into an injunction, such as about how Wal-Mart ought to manage its stores, how it should train and promote employees, and how and whether Wal-Mart ought to be unionized, even though these social views may be of little interest to many of the women they purport to represent. Counsel will also have a practical interest in maximizing attorneys' fees. Wal-Mart will have an interest in agreeing to enough lawyers' fees so that the terms of an injunction to which plaintiffs' counsel will agree will be less onerous. True, the parties must obtain judicial approval of a settlement, but that is not much of a substitute for client control. The judge has a very considerable incentive to clear the docket of a case so large and complex as to be almost untriable, and the judge also will know nothing of the individual circumstances and needs of the 1.5 million members of the class. Nor, in a proposed settlement urged upon the judge by both the plaintiffs' and the defendant's lawyers, will the judge have the benefit of adversarial presentations, except perhaps from those typically and disapprovingly called "gadfly" opponents of the settlement. A class action settlement is "a bargain

proffered for its approval without benefit of adversarial investigation."[35]

None of these burdens to justice need be borne in this case. No class action is necessary to obtain justice for women wronged by sex discrimination at Wal-Mart, because there is no attorneys' fees barrier to their obtaining individual justice. Plenty of lawyers make good livings litigating sex discrimination cases for contingent fees.

The district court calls this class certification "historic,"[36] a euphemism for "unprecedented." In the law, the absence of precedent is no recommendation. This class certification violates the requirements of Rule 23. It sacrifices the rights of women injured by sex discrimination. And it violates Wal-Mart's constitutional rights. The class action may be useful for punishing Wal-Mart and shifting much of its management to the lawyers and special master negotiating and supervising the injunction. But it is not useful for doing justice between Wal-Mart and women against whom it may have discriminated because of their sex. And that is what lawsuits are for.

The district court's formula approach to dividing up punitive damages and back pay means that women injured by sex discrimination will have to share any recovery with women who were not. Women who were fired or not promoted for good reasons will take money from Wal-Mart they do not deserve, and get reinstated or promoted as well. Compensatory damages will be forfeited. This is "rough justice"[37] indeed. "Rough," anyway. Since when were the district courts converted into administrative agencies and empowered to ignore individual justice?

---

[35]*Amchem Pros., Inc. v. Windsor*, 521 U.S. 591, 621 (1996).

[36]*Dukes v. Wal-Mart Stores, Inc.*, 222 F.R.D. 137, 142 (D. Cal. 2004).

[37]*Dukes v. Wal-Mart Stores, Inc.*, 222 F.R.D. 137, 177 (D. Cal. 2004) (deciding "that this 'rough justice' is better than the alternative of no remedy at all for any class member").