Denise ALBERTO, individually and on behalf of others similarly situated, Plaintiff,

v.

GMRI, INC., d/b/a Olive Garden, and Does 1 through 100, inclusive, Defendant.

No. CIV. 07–1895 WBS DAD.

United States District Court, E.D. California.

June 24, 2008.

---

Phillip R. Poliner, Westrup Klick LLP, Long Beach, CA, for Plaintiff.

Jan E. Eakins, Paul Hastings Janofsky and Walker, Los Angeles, CA, Stephen L. Berry, Paul, Hastings, Janofsky & Walker LLP, Costa Mesa, CA, for Defendant.

*MEMORANDUM AND ORDER RE: PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT*

WILLIAM B. SHUBB, District Judge.

Plaintiff Denise Alberto brought this matter seeking a class action lawsuit against defendant GMRI, Inc., d/b/a Olive Garden for its alleged failure to comply with (1) Industrial Welfare Commission Order 5–2001, Cal. Code Regs. tit. 8, § 11070, (2) the California Labor Code, Cal. Lab.Code §§ 201–203, 226, 1194, and (3) California's Unfair Competition Law, Cal. Bus. & Prof.Code §§ 17200–17210. Presently before the court is the parties'

joint motion for preliminary approval of class action settlement.

## I. *Factual and Procedural Background*

Defendant is a large casual dining restaurant company that owns, operates, and manages the popular Italian restaurant chain known as the "Olive Garden." (Compl.¶ 6.) From approximately November of 2003 to September of 2006, defendant employed plaintiff as a server at its Olive Garden location in Vallejo, California. (*Id.* at ¶ 10.)

On July 31, 2007, plaintiff filed a putative class action complaint in state court claiming that defendant failed to (1) pay employees the legal minimum wage, (2) properly address "reporting time pay,"[1] and (3) provide accurate itemized statements. (*Id.* at ¶ 2.) Pursuant to 28 U.S.C. § 1441(b), defendant subsequently removed the case to this court on September 12, 2007 based on diversity jurisdiction, 28 U.S.C. § 1332. (Def.'s Notice of Removal 3:5–6.)

After plaintiff amended her Complaint once as a matter of course on October 26, 2007, Fed.R.Civ.P. 15(a)(1), defendant filed motions to dismiss and/or strike portions of plaintiff's First Amended Complaint on November 8, 2007. (Docket Nos. 15, 18–21.) Before the court could hear these motions, however, the parties engaged in early mediation and thereafter notified the court on April 22, 2008 that they had agreed to settlement terms. (*Id.* No. 26.) Consequently, the parties now seek preliminary approval of their Joint Stipulation of Settlement and Release.

## II. *Discussion*

The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions. *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir.1992). Nevertheless, where, as here, "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both [1] the propriety of the certification and [2] the fairness of the settlement." *Staton v. Boeing Co.,* 327 F.3d 938, 952 (9th Cir.2003).

In conducting the first part of its inquiry, the court "must pay 'undiluted, even heightened, attention' to class certification requirements" because, unlike in a fully litigated class action suit, the court will not have future opportunities "to adjust the class, informed by the proceedings as they unfold." *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *accord Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir.1998). The parties cannot "agree to certify a class that clearly leaves any one requirement unfulfilled," and consequently the court cannot blindly rely on the fact that the parties have stipulated that a class exists for purposes of settlement. *Berry v. Baca,* No. 01–02069, 2005 WL 1030248, at *7 (C.D.Cal. May 2, 2005); *see also Amchem,* 521 U.S. at 622, 117 S.Ct. 2231 (observing that nowhere does Rule 23 say that certification is proper simply because the settlement appears fair). In conducting the second part of its inquiry, the "court must carefully consider 'whether a proposed settlement is fundamentally fair, adequate, and reasonable,' recognizing that '[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness ....' " *Staton,* 327 F.3d at 952 (quoting *Hanlon,* 150 F.3d at 1026); *see also* Fed.R.Civ.P. 23(e) (outlining class action settlement procedures).

Procedurally, the approval of a class action settlement takes place in two stages. In the first stage of the approval process, " 'the court preliminarily approve[s] the Settlement pending a fairness hearing, temporarily certifie[s] the Class ..., and authorize[s] notice to be given to the Class.' " *West v. Circle K Stores, Inc.,* No. 040438, 2006 WL

---

1. Section 5 of the Industrial Welfare Commission Wage Orders effectively delineates "reporting time pay" by providing that

 an employee is required to report for work and does report, but is not put to work or is furnished less than half said employee's usual or scheduled day's work, the employee shall be paid for half the usual or scheduled day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the employee's regular rate of pay, which shall not be less than the minimum wage.

 Cal.Code Regs. tit. 8, § 11070(5)(A).

1652598, at *2 (E.D.Cal. June 13, 2006) (quoting *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 227 F.R.D. 553, 556 (W.D.Wash.2004)). In this Order, therefore, the court will only "determine[ ] whether a proposed class action settlement deserves preliminary approval" and lay the ground work for a future fairness hearing. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D.Cal.2004). At the fairness hearing, after notice is given to putative class members, the court will entertain any of their objections to (1) the treatment of this litigation as a class action and/or (2) the terms of the settlement. *See Diaz v. Trust Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir.1989) (holding that prior to approving the dismissal or compromise of claims containing class allegations, district courts must, pursuant to Rule 23(e), hold a hearing to "inquire into the terms and circumstances of any dismissal or compromise to ensure that it is not collusive or prejudicial").[2] Following the fairness hearing, the court will make a final determination as to whether the parties should be allowed to settle the class action pursuant to the terms agreed upon. *DIRECTV, Inc.*, 221 F.R.D. at 525.

### A. *Certification of the Class*

■ A class action will only be certified if it meets the four prerequisites identified in Federal Rule of Civil Procedure 23(a) and additionally fits within one of the three subdivisions of Federal Rule of Civil Procedure 23(b). Although a district court has discretion in determining whether the moving party has satisfied each Rule 23 requirement, *Califano v. Yamasaki*, 442 U.S. 682, 701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979); *Montgomery v. Rumsfeld*, 572 F.2d 250, 255 (9th Cir. 1978), the court must conduct a rigorous inquiry before certifying a class. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *E. Tex.*

*Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 403–05, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977).

As noted above, despite the parties' stipulation that a class exists for purposes of settlement, this does not relieve the court of its duty to conduct its own inquiry. Typically, when parties settle before the class is certified, the court is denied adversarial briefs on the class certification issue. Although defendant now agrees, at least for the purposes of settlement, that class treatment is appropriate, the court must nonetheless decide whether the issues in this case should be treated as class claims pursuant to Rule 23.

#### 1. *Rule 23(a)*

Rule 23(a) restricts class actions to cases where

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). These requirements are more commonly referred to as numerosity, commonality, typicality, and adequacy of representation, respectively. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998).

##### a. *Numerosity*

■ While courts have not established a precise threshold for determining numerosity, *Gen. Tel. Co. v. E.E.O.C.*, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980), a class consisting of one thousand members "clearly satisfies the numerosity requirement." *Sullivan v. Chase Inv. Servs., Inc.*, 79 F.R.D. 246, 257 (N.D.Cal.1978). In the instant matter, plaintiff offers declaratory ev-

---

2. As noted by this court in a previous Order, part of the reasoning in *Diaz* appears to have been overruled by the United States Supreme Court in *Amchem*. *West v. Circle K Stores, Inc.*, No. 04–0438, 2006 WL 1652598, at *2 (E.D.Cal. June 13, 2006). Namely, *Diaz* assumed that a court could approve settlement without certifying the class. *See Diaz*, 876 F.2d at 1408 ("Before certification, the dismissal is not res judicata against the absent class members and the court does not need to perform the kind of substantive oversight required when reviewing a settlement binding upon the class."). As the discussion above illustrates, however, this reasoning is incompatible with the Supreme Court's holding in *Amchem*.

idence estimating a potential class size of 18,000 members, including all of the servers employed by defendant at nearly 100 restaurants over almost a five year period.[3] (Poliner Decl. ¶ 7(a).)

■ Although plaintiff has not provided the court with any form of official documentation supporting this approximation, a court may rely on common sense assumptions to support findings of numerosity. Manual for Complex Litigation (Fourth) § 23.22(3) (2008); *see Sherman v. Griepentrog*, 775 F.Supp. 1383, 1389 (D.Nev.1991) (finding that a court may draw reasonable inferences of class size from facts before it); *see, e.g., West v. Circle K Stores, Inc.*, No. 04–0438, 2006 WL 1652598, at *3 (E.D.Cal. June 13, 2006) ("[A]ccepting plaintiffs' alleged class size as true, and recognizing that the joinder of 1,752 plaintiffs would be impracticable, the court holds that the numerosity requirement is satisfied."); *cf. Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir.1975) (satisfying burden of Rule 23(a) requirements can be met by providing court with sufficient basis for forming a "reasonable judgment" on each requirement).[4] Moreover, even if the actual class size falls below plaintiff's valuation of 18,000 members, it is reasonable to assume that its size will surpass previous Ninth Circuit thresholds. *See, e.g., Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330 (9th Cir.1997) (finding numerosity requirement to be met with approximately 110 potential class members); *Leyva v. Buley*, 125 F.R.D. 512, 515 (E.D.Wash.1989) (allowing certification of a fifty-member class).

### b. *Commonality*

■ Rule 23(a) also requires that "questions of law or fact [be] common to the class." Fed.R.Civ.P. 23(a)(2). Because "[t]he Ninth Circuit construes commonality liberally," "it is not necessary that *all* questions of law and fact be common." *West*, 2006 WL 1652598, at *3 (citing *Hanlon*, 150 F.3d at 1019). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019.

Plaintiff identifies several common legal issues within the putative class that purportedly would have been examined had this case gone to trial, including whether defendant: (1) failed to pay reporting time compensation; (2) failed to pay the legal minimum wage; (3) engaged in unfair, unlawful, or fraudulent business practices; (4) failed to promptly and timely pay compensation owed to class members upon termination of their employment; and (5) is liable for waiting time penalties based upon defendant's willful retention of compensation. (Poliner Decl. ¶ 7(c).)

The court agrees that the potential claims of class members would arise from a set of circumstances similar to that of plaintiff, namely employment as a server in defendant's restaurants between August 2003 and June 2008. *See Dukes v. Wal–Mart, Inc.*, 509 F.3d 1168, 1177–78 (9th Cir.2007) (stating that the standard in Rule 23(a)(2) is "qualitative rather than quantitative—one significant issue common to the class may be sufficient to warrant certification"). Because it therefore appears that the same alleged conduct of defendant would "form[ ] the basis of each of the plaintiff's claims," *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 384 (C.D.Cal.2007), class relief based on commonality is appropriate. *See Califano v. Yamasaki*, 442 U.S. 682, 701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979) (holding that commonality issues of the class

---

**3.** Specifically, the parties' Settlement Agreement states that the Settlement Class is composed of "non exempt employees of [defendant] in California who were employed in Covered Positions during the Covered Time Frame." (Poliner Decl. Ex. A ("Settlement Agreement") ¶ A–5.) Covered positions and time frame include: "all servers, including server breakers, who work or worked for GMRI at any Olive Garden restaurants in California ... during the period beginning August 3, 2003, through June 10, 2008." (*Id.* at ¶¶ 4–5, Settlement Agreement ¶ A–4.)

**4.** *But see Siles v. ILGWU Nat'l Ret. Fund*, 783 F.2d 923, 930 (9th Cir.1986) (finding numerosity not met in case charging that pension fund eligibility requirements violated the Employee Retirement Income Security Act because, although plaintiff presented evidence that 31,000 employees were covered by the plan and lost their jobs, plaintiff failed to show how many employees were eligible for and failed to receive benefits).

"turn on questions of law applicable in the same manner to each member of the class").

### c. Typicality

Rule 23(a) further requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). Typicality requires that named plaintiffs have claims "reasonably coextensive with those of absent class members," but their claims do not have to be "substantially identical." *Hanlon*, 150 F.3d at 1020. The test for typicality " 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.' " *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted).

Plaintiff argues that all putative class members suffered similar injuries as a result of defendant's alleged conduct—e.g., its failure to compensate server employees with "reporting time pay" and to timely pay them upon their termination. Despite the absence of a formal discovery process, plaintiff's counsel maintains that the parties conducted extensive informal discovery and exchange of information, particularly during the course of the early mediation process. (Stipulation Regarding Stay of Action Pending Early Mediation ¶¶ 2–4.) After interviewing randomly selected settlement class members and examining documents such as clock in/clock out reports, wage compensation reports, confidential data sheets, and schedules, plaintiff estimates that, on average, defendant's "reporting time pay" violations deprived employees of one hour of pay for every twenty-seven shifts they worked. (Settlement Agreement ¶ 9; Parties' Mem. in Supp. of Joint Mot. for Preliminary Approval of Class Action Settlement 2:16–17.) If true, plaintiff's research suggests that her claims are typical of the class.

As noted above, because the parties proposed a settlement prior to certification, the record is devoid of adversarial briefs on the subject that would have been supplemented with commonly-generated products of formal discovery. The court's inability to examine prior meritorious arguments regarding class certification—as well as evidence such as the "clock in/clock out" and compensation reports—makes it difficult to undertake a complete assessment of the potential claims of putative class members.[5] This element is an essential part of conducting a standard typicality inquiry and in determining if the injuries of the representative plaintiff are in fact typical of the class. *See E. Tex. Motor Freight Sys., Inc., v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) (noting that it is essential to establish that the class representative "possess the same interest and suffer the same injury" as class members in order to satisfy typicality) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974)).

---

**5.** The lack of an adversarial record in this matter, coupled with mediation and settlement prior to the formal discovery phase, has left the court with little tangible evidence regarding many of plaintiff's assertions. Plaintiff and her counsel have primarily submitted only anecdotal evidence in furtherance of their argument that the Settlement Agreement meets the Rule 23(a) requirements. The principle United States Supreme Court decision on determining Rule 23(a) requirements notes that "actual, not presumed, conformance with Rule 23(a) remains ... indispensable" and that certification requires "rigorous analysis." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Although the court is aware of no cases on point in the Ninth Circuit, other circuits have found that anecdotal evidence is insufficient to justify certification because such evidence usu-

ally cannot bridge the gap between individual and class-wide claims. *See, e.g., Sheehan v. Purolator*, 839 F.2d 99, 103 (2d Cir.1988) (finding one affidavit insufficient to establish existence of class); *Harris v. Marsh*, 100 F.R.D. 315, 322 (E.D.N.C.1983) (finding anecdotal evidence focusing on discrete occurrences insufficient to prove existence of class). Although courts are extremely reluctant to adopt a rule categorically rejecting certification when supported solely by anecdotal evidence, it appears that more evidence is needed here. Plaintiff's request is filled with presumptions and recitations of factual inquiries, but is bare when it comes to actual documentation. In order to protect the interests of the absent class members, it will be necessary for counsel to produce documentation at the fairness hearing prior to final approval.

Nevertheless, for the purpose of preliminary certification, the court is inclined to accept that the injuries of the named plaintiff are likely to be "reasonably coextensive" with those of the putative class.[6] Although class certification should not be granted if "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it," *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir.1990), there is nothing unique about plaintiff's background or factual situation that would require her to pursue a divergent course of conduct at the expense of the putative class's interest. This settlement agreement, therefore, does not appear to be the result of any exceptional circumstances or atypical claims proffered by plaintiff.[7]

### d. Adequacy of Representation

Finally, Rule 23(a) requires "representative parties [who] will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). To resolve the question of legal adequacy, the court must answer two questions: (1) do the named plaintiff and her counsel have any conflicts of interest with other class members and (2) has the named plaintiff and her counsel vigorously prosecuted the action on behalf of the class? *Hanlon*, 150 F.3d at 1020. This adequacy inquiry considers a number of factors, including "the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." *Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir.1992).

The examination of potential conflicts of interest in settlement agreements "has long been an important prerequisite to class certification. That inquiry is especially critical when [ ] a class settlement is tendered along with a motion for class certification." *Hanlon*, 150 F.3d at 1020. Here, the interests of plaintiff and her course of legal redress are not ostensibly at variance with those of putative class members. (*See* Poliner Decl. ¶ 8 ("Plaintiff's counsel is not aware of any conflicts of interest with other class members . . . .").) Although the definition of the settlement class does encompass a large number of members, the class itself is narrowly defined: servers and server breakers who worked for defendant at any Olive Garden restaurants in California from August 3, 2003 through June 10, 2008. *See supra* n. 3. This definition effectively minimizes the probability that the certification procedure will overlook legitimate yet dissimilar claims of class members; rather, the potential for conflicting interests will remain low while the likelihood of shared interests remains high. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625–26, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (internal citation and quotations omitted).

The second prong of the adequacy inquiry examines the vigor with which the named plaintiff and her counsel have pursued the common claims. "Although there are no fixed standards by which 'vigor' can be assayed, considerations include competency of counsel and, in the context of a settlement-only class, an assessment of the rationale for not pursuing further litigation." *Hanlon*, 150 F.3d at 1021. Plaintiff's counsel's competency with respect to class action litigation is significant. Specifically, a thorough declaration submitted to the court lists several class action proceedings in both state and federal court in which plaintiff's counsel served as either lead or co-counsel. (Poliner Decl.

---

**6.** The court acknowledges that plaintiff's injury may be more or less than that of other presumed class members. This difference, however, is not dispositive. Specifically, a named plaintiff's individualistic injury may nonetheless be found typical of those of the remainder of the class, particularly if the injury is the result of an alleged common practice. *See Dukes v. Wal–Mart, Inc.*, 509 F.3d 1168, 1185 (9th Cir.2007) ("Some degree of individuality is to be expected in all cases, but that specificity does not necessarily defeat typicality.").

**7.** Again, it shall be the responsibility of parties at the final approval hearing to provide more detailed documentation in support of typicality before the court will sanction the settlement's approval.

¶ 8.) [8] Moreover, the majority of these class action proceedings resulted in approved settlements. (*Id.*)

■■■ Probing plaintiff and her counsel's rationale for not pursuing further litigation, however, is inherently more complex. "District courts must be skeptical of some settlement agreements put before them because they are presented with a 'bargain proffered for ... approval without the benefit of an adversarial investigation.'" *Hanlon,* 150 F.3d at 1022 (quoting *Amchem,* 521 U.S. at 620, 117 S.Ct. 2231). This logic is certainly applicable here, namely because sparse documentation has been offered to confirm that the settlement terms are adequate. Plaintiff's counsel again declares that a thorough investigation and extensive informal discovery has led him to believe that the settlement is fair, reasonable, adequate, and in the best interest of the settlement class. (Settlement Agreement ¶ 9.) Yet counsel has not presented the court with any corroborating documents to substantiate his conclusion. The fact that the parties reached an agreement before an experienced mediator, while commendable, does not preclude a detailed review of the settlement terms. Settlement adequacy should be scrutinized when there is evidence of fee-driven settlements, exorbitant service payments, or collusion between the parties. *Hanlon,* 150 F.3d at 1022. An examination of such concerns is addressed below in the preliminary fairness assessment. *See infra* § II(2).

■■■ The court reiterates the need for documentation that directly links plaintiff's assertions with the terms of the settlement agreement. Nonetheless, pending the introduction at the final fairness hearing of evidence in support of counsel's findings, plaintiff's proffered "adequacy of representation" showing preliminarily demonstrates that plaintiff can sufficiently represent the class.

## 2. *Rule 23(b)*

An action that meets all the prerequisites of Rule 23(a) may be maintained as a class action only if it also meets the requirements of one of the three subdivisions of Rule 23(b). *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 163, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). In this case, plaintiff seeks certification under Rule 23(b)(3), "which is appropriate 'whenever the actual interests of the parties can be served best by settling their differences in a single action.'" *Hanlon,* 150 F.3d at 1022 (citation omitted). A class action may be maintained under Rule 23(b)(3) if (1) "the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3).

### a. *Predominance*

■■ Because Rule 23(a)(3) already considers commonality, the focus of the Rule 23(b)(3) predominance inquiry is on the balance between individual and common issues. *Hanlon,* 150 F.3d at 1022; *see also Amchem,* 521 U.S. at 623, 117 S.Ct. 2231 ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation"). The parties joint motion sufficiently demonstrates that "[a] common nucleus of facts and potential legal remedies dominates this litigation." *Hanlon,* 150 F.3d at 1022. Where the aforementioned common questions, *see supra* II.A.1.b., "present a significant aspect of the case and ... can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.*

■■■ The existence of individualized issues in this action, if any, does not preclude a finding of predominance. *See, e.g., Moreno v. AutoZone, Inc.,* No. 05–4432, 2008 WL 2271599, at *8 (N.D.Cal. May 30, 2008) (predominance inquiry satisfied even though court would have to "grapple with individual issues, such as whether a late paycheck re-

---

**8.** In the last three years alone, plaintiff's counsel's firm has certified over thirty class action lawsuits that "have involved the failure to pay employees overtime, failure to provide employees with meal and rest breaks, untimely payment of employees' wages upon termination, false and deceptive advertising, and unlawful deductions from tenants' security deposits." (*Id.*)

flects earned or unearned wages"); *Kesler v. Ikea U.S., Inc.*, No. 07–0568, 2008 WL 413268, at *7 (C.D.Cal. Feb. 4, 2008) (predominance inquiry satisfied even though "each putative class member's right to recovery depends on the fact that he or she is a 'consumer' for the purposes of the FCRA"). While both parties concede that putative class members will be entitled to individualized damages, "individual issues regarding damages will not, by themselves, defeat certification under Rule 23(b)(3)." *West v. Circle K Stores, Inc.*, No. 040438, 2006 WL 1652598, at *7–8 (E.D.Cal. June 13, 2006) (citing *Blackie v. Barrack*, 524 F.2d 891, 905–09 (9th Cir.1975)); *see also id.* (finding predominance inquiry satisfied despite the fact that "individual differences in accrual caps, accrual rates, and amount of vacation time accrued" would result in individualized damages).

■ To the extent that any further individual issues may exist, there is no indication that such issues would be anything more than "local variants of a generally homogenous collection of causes" that derive from the named plaintiff's allegations. *Hanlon*, 150 F.3d at 1022. Such idiosyncratic differences, therefore, "are not sufficiently substantive to predominate over the shared claims." *Id.* at 1022–23.

b. *Superiority*

■ In addition to the predominance requirement, Rule 23(b)(3) provides a non-exhaustive list of matters pertinent to the court's determination that the class action device is superior to other methods of adjudication. Fed.R.Civ.P. 23(b)(3)(A)-(D). These matters include:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the difficulties likely to be encountered in the management of a class action.

*Id.* Some of these factors, namely (D) and perhaps (C), are irrelevant if the parties have agreed to a pre-certification settlement. *Amchem*, 521 U.S. at 620, 117 S.Ct. 2231. Additionally, the court is unaware of any concurrent litigation regarding the issues of the instant case. In the absence of competing lawsuits, it is also unlikely that other individuals have an interest in controlling the prosecution of this action or other actions, although objectors at the fairness hearing may reveal otherwise. As it stands today, however, the class action device appears to be the superior method for adjudicating this controversy.

B. *Rule 23(e): Fairness, Adequacy, and Reasonableness of Proposed Settlement*

■ Having determined that class treatment appears to be warranted,[9] the court must now address whether the terms of the parties' settlement appear fair, adequate, and reasonable. In conducting this analysis, the court must balance several factors including

the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction

---

9. The court notes that it has conducted a full analysis of the class certification question at this stage to determine if all of the effort that will necessarily go into preparing for the fairness hearing is appropriate. However, the court is not required to make a final determination that class treatment is appropriate until the final settlement approval, and it therefore does not herein make that final determination. *See In re Gen.*

*Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 797 (3d Cir.1995) (holding that while the trustworthiness of the negotiation process used to approve the settlement can be relied on to justify provisional certification of a settlement class, "final settlement approval depends on the finding that the class met all the requisites of Rule 23").

of the class members to the proposed settlement.

*Hanlon,* 150 F.3d at 1026. *But see Molski v. Gleich,* 318 F.3d 937, 953–54 (9th Cir.2003) (noting that a district court need only consider some of these factors—namely those designed to protect absentees). Given that some of these factors cannot be fully assessed until the court conducts its fairness hearing, "a full fairness analysis is unnecessary at this stage ...." *West,* 2006 WL 1652598, at *9 (citation omitted). The court, therefore, will simply conduct a cursory review of the terms of the parties' settlement for the purpose of resolving any glaring deficiencies before ordering the parties to send the proposal to class members.

1. *Terms of the Settlement Agreement*

(1) **The Settlement Class:** Class Members include all servers, including server breakers, who worked for the defendant at any Olive Garden restaurant in California from August 3, 2003, through June 10, 2008 ("class period"). (Parties' Mem. in Supp. of Joint Mot. for Preliminary Approval of Class Action Settlement 3:18–21.)

(2) **Notice:** The Settlement Administrator will mail a notice of pendency of class action, proposed settlement and hearing date for court approval ("Notice") to Class Members, by first class mail, within thirty calendar days after the entry of the order granting preliminary approval of the settlement and Notice. (Settlement Agreement ¶ 18.) Included with the Notice, the Settlement Administrator will provide Class Members with a Claim Form and a Request for Exclusion. (*Id.*)

(3) **Claim Forms:** To be eligible to receive a portion of the settlement, Class Members must complete a Claim Form and return it to the Settlement Administrator within forty-five calendar days of the day Notice was mailed. (*Id.* at ¶¶ 24–25.) If the Claim Form is not completed in full, the Settlement Administrator will send one deficiency notice, which will give the Claimant fourteen days to send a completed Claim Form. (*Id.* at ¶ 25.) The Settlement Administrator will mail a reminder postcard to all Class Members who have not submitted a Claim Form within twenty days of the deadline. (*Id.* at ¶ 26.)

(4) **Requests for Exclusion:** To be excluded from the settlement, class members must complete a Request for Exclusion Form and return it to the Settlement Administrator within forty-five calendar days of the day Notice was mailed. (Poliner Decl. Ex. 1 ¶ III.B.) Submitting a Request for Exclusion Form preserves class members' rights to bring their own lawsuits against the defendant. (*Id.*) If five percent or more of the Class Members request exclusion from the settlement, then the defendant will have the option of cancelling the settlement. (Settlement Agreement ¶ 27.)

(5) **Release:** "Class members who have not returned a completed Request for Exclusion Form will fully release and discharge [the defendant] and any of its former and present parent companies, subsidiaries, and affiliates, and the officers, directors, employees, partners, representatives, shareholders, agents, attorneys, insurers, successors, and assigns of all such entities ("Released Parties"), from any and all claims, rights, demands, debts, obligations, guarantees, liabilities, costs, expenses, attorneys' fees, damages, actions, and causes of action of every nature and description, whether known or unknown, contained in or related to the Action ...." (Settlement Agreement ¶ 14.)

(6) **Total Settlement Amount:** Defendant will contribute $700,000 to resolve all issues related to this litigation. (Settlement Agreement ¶ 11(a).)

(7) **Net Payment:** Defendant will contribute a fund of approximately $435,000 for the Settlement Class. (Parties' Mem. in Supp. of Joint Mot. for Preliminary Approval of Class Action Settlement 3:22–25.) The Net Payment is the Total Settlement Amount ($700,000) less the attorneys' fees (not to exceed $150,000), the documented litigation costs (not to exceed $10,000), the service payment to the class representative (not to exceed $5,000), the employer's portion of any payroll taxes, and the costs of administering in the settlement (not to ex-

ceed $70,000). (Settlement Agreement ¶ 11(b), (f)-(i).)

(8) **Individualized Payment Amounts:** The individual payment amounts will be allocated on a proportional basis according to the number of months each Claimant worked during the class period. (Parties' Mem. in Supp. of Joint Mot. for Preliminary Approval of Class Action Settlement 3:25–27.) Calculating the "Individual Payment Amount" requires a three-step process. First, adding together all of the months worked by every Claimant to determine the "Total Work Months." Next, dividing the "Net Payment" by the "Total Work Months" to find the "Dollars per Work Month." Finally, multiplying the "Dollars per Work Month" by the number of months the individual Claimant worked. (Settlement Agreement ¶ 11(c)-(d).) [10]

(9) **Objection to the Settlement:** Class members may object to the terms of the settlement by filing a written objection and a notice of intention to appeal at the final approval hearing within forty-five calendar days of the day Notice was mailed. (Poliner Decl. Ex. 1 ¶ III.C.) Objections must be mailed to Class Counsel, the Defendant's Counsel, and the Clerk of the Court. (*Id.*) If the court rejects the objection, the class member will be bound by the terms of the settlement unless he or she has also filed a Request for Exclusion. (*Id.*)

2. *Preliminary Determination of Adequacy*

■■ At this preliminary approval stage, the court again need only "determine whether the proposed settlement is within the range of possible approval." *Gautreaux v. Pierce*, 690 F.2d 616, 621 n. 3 (7th Cir.1982) (internal quotations omitted). Essentially, the court is only concerned with "whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys ...." *West v. Circle K Stores, Inc.*, No. 040438, 2006 WL 1652598, at *11 (E.D.Cal. June 13, 2006)(citation omitted).

The Ninth Circuit acknowledges that "assessing the fairness, adequacy and reasonableness of the substantive terms of a settlement agreement can be challenging." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *see also id.* (recognizing the danger that class settlements could "result in a decree in which 'the rights of [class members] ... may not [be] given due regard by negotiating parties'"). The court is assisted in its inquiry where, as here, "the stipulation and settlement appear to be, for the most part, the result of vigorous, arms-length bargaining." *West*, 2006 WL 1652598, at *11.

Counsel for both sides contend that they have been diligent in pursuit of settlement. The parties also employed David A. Rotman, widely recognized in this district as "a prominent mediator with a specialty in employment discrimination cases," to assist the negotiation of their settlement agreement. *Parker v. Foster*, No. 05–0748, 2006 WL 2085152, at *1 (E.D.Cal. July 26, 2006); *see also Glass v. UBS Fin. Servs., Inc.*, No. 06–4068, 2007 WL 221862, at *5 (N.D.Cal. Jan. 26, 2007) ("The settlement was negotiated and approved by experienced counsel on both sides of the litigation, with the assistance of a well-respected mediator with substantial experience in employment litigation[, and] this factor supports approval of the settlement."). Additionally, the detailed notice provisions proposed by the parties, (Poliner Decl. Ex. 1), clearly explain to the putative class members what their options are and are thus more than adequate. (Poliner Decl. Ex. 1); *see also* Fed.R.Civ.P. 23(c)(2)(B) (requiring only "the best notice that is practicable under the circumstances" "[f]or any class certified under Rule 23(b)(3)"); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir.2004) ("Notice is satisfactory if it 'generally describes the terms of the settlement in

**10.** The Settlement Advisor will calculate Individual Payment Amounts twice. First, he will calculate Individual Payment Amounts assuming every class member opted into the settlement and allocate the Net Payment using the three-step process described above. (Settlement Agreement ¶ 11(c)-(d).) Because it is realistic to assume that many class members will not return Claim Forms, the Settlement Advisor will also calculate the Remainder, or the unclaimed portion of the Net Payment, and allocate it to the Claimants using the same three-step process. (*Id.*)

sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.' " (quoting *Mendoza v. Tucson Sch. Dist. No. 1,* 623 F.2d 1338, 1352 (9th Cir.1980))).

■ To mitigate any further "inherent dangers of class settlements," the fairness inquiry "focuses primarily upon particular aspects of the decree that directly lend themselves to pursuit of self-interest ... namely attorneys' fees and the distribution of relief ... among class members." *Staton,* 327 F.3d at 960; *see also id.* ("We have characterized these inherent dangers of class settlements as encompassing the possibility that 'the agreement ... is the product of fraud or overreaching by, or collusion between, the negotiating parties.' ") (citation omitted).

### a. *Attorneys' Fees*

■ In order for a settlement to be fair and adequate, "a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Id.* at 963. The district court has discretion to use either the percentage-of-the-fund method[11] or the lodestar/multiplier method[12] in calculating fee awards in common fund cases. *In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1295 (9th Cir.1994). Because "no presumption in favor of either the percentage or the lodestar method encumbers the district court's discretion to choose one or the other," the choice between percentage calculation and lodestar depends upon the circumstances of the case. *Id.* at 1295, 1296 (citing *Six Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir.1990)). Irrespective of the chosen method, "the district court should be guided by the fundamental principle that fee awards out of common funds be 'reasonable under the circumstances.' " *Id.* (quoting *Florida v. Dunne,* 915 F.2d 542, 545 (9th Cir.1990)).

Plaintiff requests an attorneys' fee award "in the amount of $150,000 ... and up to $10,000 for out of pocket expenses incurred in litigating this action." (Poliner Decl. ¶ 5.d.) Plaintiff argues this amount is reasonable because it constitutes approximately twenty-two percent of the total settlement amount, a number slightly below the Ninth Circuit's twenty-five percent benchmark for attorneys' fees in common fund cases. *See Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1029 (9th Cir.1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."). Nonetheless, the Ninth Circuit has also stated that "[tDELCH 04-]he 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases. Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir.2002); *see also In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d at 1295–96 (holding that, in passing on post-settlement fee applications, "courts cannot rationally apply any particular percentage—whether 13.6 percent, 25 percent or any other number—in the abstract, without reference to all the circumstances of the case").

While the instant record shows no evidence of bribery or collusion in reference to the requested attorneys' fees, it is nonetheless devoid of any direct support for plaintiff's counsel's requested fee amount. Specifically, this action is less than a year old. There has not been a single hearing in the matter, and the only motions filed (by defendant) were mooted by the parties' stipulated stay of action before plaintiff filed an opposition. Not only did the formal discovery process never get underway, but the court had never even issued a status order delineating initial discovery disclosure deadlines.

Other than filing two complaints, engaging in mediation, and filing the instant joint mo-

---

11. Under the percentage-of-the-fund method, the court calculates the fee award by designating a percentage of the total common fund. *Six Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir.1990).

12. Under the lodestar method, the court calculates the fee award by multiplying the number of hours reasonably spent by a reasonable hour rate and then enhancing that figure, if necessary, to account for the risks associated with the representation. *Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 272 (9th Cir.1989).

tion, the circumstances necessitating a fee award for plaintiff's counsel at twenty-two percent of the settlement amount are not readily apparent to the court. *Compare Fischel v. Equitable Life Assur. Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir.2002) ("The fact that the case was settled early in the litigation supports the district court's ruling [not to award class counsel's twenty-five percent fee award request because] the 25 percent benchmark of the percentage-of-the-fund approach might very well have been a 'windfall.' "); *with Vizcaino*, 290 F.3d at 1050 (upholding twenty-eight percent fee award where class counsel submitted evidence showing that they "achieved excellent results" in a "extremely risky" matter, their "performance generated benefits beyond the cash settlement fund," and their representation of the class "extended over eleven years, entailed hundreds of thousands of dollars of expense, and required counsel to forgo significant other work, resulting in a decline in the firm's annual income"); *see also Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir.1990) (affirming twenty-five percent fee award where "the litigation lasted more than 13 years, obtained substantial success, and involved complicated legal and factual issues"); *Santos v. Camacho*, No. 04–0006, 2008 WL 1699448, at *34 (D.Guam April 10, 2008) (holding that, given "the minimal amount of discovery conducted" and the lack of "any pre-trial or trial proceedings," "[i]t seems quite clear that the requested 10% of the common fund would be unreasonable").

The sole insight that plaintiff has provided to the court with respect to her counsel's representation is a statement in counsel's own affidavit declaring that "the parties propounded discovery and exchanged thousands of documents, interviewed numerous class members, opposed motions, undertook expert analysis, and mediated the case before a well respected mediator." (Poliner Decl. ¶ 4.) Because the record demonstrates that plaintiff has not "opposed motions" nor supplied the court with any products of her counsel's purported discovery, the court is unsure what amount of weight should be given to this conclusory assertion.[13] *See Chiaramonte v. Pitney Bowes, Inc.*, No. 06–1507, 2008 WL 510765, at *7 (S.D.Cal. Feb. 25, 2008) (declining to award requested fee amount where the class counsel's assertion of exceptional representation "is supported by little more than conclusory statements about the expense, time, and risk inherent in all class action litigation").

■■■ Where, as here, plaintiff's counsel has not provided sufficient documentation in support of its fee request, and the circumstances "indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors," the "benchmark percentage should be adjusted, or replaced by a lodestar calculation." *Six Mexican Workers*, 904 F.2d at 1311. At the very least, a court should employ the lodestar method as a cross-check on the percentage method in order to ensure a fair and reasonable result. *In re Immunex Sec. Litig.*, 864 F.Supp. 142, 144 (W.D.Wa.1994); *see also Santos*, 2008 WL 1699448, at *34 ("[A]fter doing a lodestar cross-check with the percentage requested, this request of 10% seems far less reasonable.").

■■■ Because significant questions remain regarding the fair and reasonable allocation of attorneys' fees, the court will decline plaintiff's invitation to employ only the percentage-of-the-fund method and will instead exercise its discretion to calculate and/or cross-check the requested fee award via the lodestar method. As plaintiff has failed to provide the court with any pertinent documentation, the court will instruct plaintiff's counsel

---

13. Plaintiff's counsel also attempts to legitimize their fee request by indicating that "defendant will not oppose the motion of Plaintiff's attorneys ... for [their] award." (Poliner Decl. ¶ 5.d.) A defendant's willingness to pay opposing counsel's fees as part of a settlement agreement, however, does not prove that the fee amount is reasonable. Rather, "the allocation between the class payment and the attorney's fees is of little or no interest to the defense," whose priority is "disposing of the total claim asserted against it." *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir.2003). Worse, a collusive settlement agreement could allow "a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class." *Lobatz v. U.S. W. Cellular*, 222 F.3d 1142, 1148 (9th Cir.2000).

to file a thorough fee award petition prior to the fairness hearing that details the hours reasonably spent representing plaintiff in this action and the justification for any enhancement due to risks associated with its representation.

### b. *Distribution of Award to Named and Unnamed Class Members*

#### i. *$5,000 Incentive Payment for the Named Plaintiff*

 "[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." *Staton,* 327 F.3d at 977. The district court, however, must "evaluate their awards individually" to detect "excessive payments to named class members" that may indicate "the agreement was reached through fraud or collusion." *Id.* at 975. To assess whether an incentive payment is excessive, district courts balance "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *Id.*

The proposed Settlement Agreement provides that plaintiff shall receive an incentive payment of $5,000 for her role as class representative. (Settlement Agreement ¶ 11(f).) Courts have generally found that $5,000 incentive payments are reasonable. *See, e.g., In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 463 (9th Cir.2000) (approving incentive awards of $5,000 each to the two class representatives of 5,400 potential class members in a settlement of $ 1.725 million); *In re Smith-Kline Beckman Corp. Sec. Litig.,* 751 F.Supp. 525, 535 (E.D.Pa.1990) (approving incentive awards of $5,000 for one named representative of each of the nine plaintiff classes involving more than 22,000 claimants in a settlement of $22 million). In previous cases, however, analogous incentive payments constituted a significantly smaller por-

tion of the overall settlement than the instant plaintiff's proposed $5,000 incentive payment, which constitutes 0.71% of the total settlement amount. *See In re Mego Fin. Corp.,* 213 F.3d at 463 (total incentive payments did not exceed 0.56% of total settlement); *In re U.S. Bancorp. Litig.,* 291 F.3d 1035, 1038 (8th Cir.2002) (total incentive payments did not exceed 0.35% of total settlement); *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir.1998) (incentive payment did not exceed 0.17% of total settlement); *In re SmithKline Beckman Corp.,* 751 F.Supp. at 535 (total incentive payments did not exceed 0.18% of total settlement).

 If every member of the class opted into the settlement, each claimant would receive an average of only $24.17 [14] while the named plaintiff would receive more than $5,000. Given this explicit disparity and the utter lack of evidence demonstrating the quality of plaintiff's representative service, the court may be reticent to ultimately approve the parties' proposed settlement. *See Ybarrondo v. NCO Fin. Sys., Inc.,* No. 05–2057, 2008 WL 183714, at *3 (S.D.Cal. Jan. 18, 2008) (refusing to approve class settlement until the parties "address the issue of the named Plaintiff's proposed $2,000 cash award, which appears disproportionately large in comparison to the class members' $23 cash award[, by showing] how the named Plaintiff's award breaks down between damages and incentive payment, and how the incentive payment was earned"). On or before the date of the fairness hearing, the parties should present or be prepared to present evidence of the named plaintiff's substantial efforts taken as class representative [15] to justify the discrepancy between her award and those of the unnamed plaintiffs. *See Cook,* 142 F.3d at 1016 (approving an incentive payment of 0.17% of total settlement to the named plaintiff because he had "spent hundreds of hours with his attorneys

---

14. The net payment is approximately $435,000 and the Settlement Class could include more than 18,000 members. (Parties' Mem. in Supp. of Joint Mot. for Preliminary Approval of Class Action Settlement 3:22–25, 9:1–3 ($435,000 ÷ 18,000 = $24.17).)

15. Relevant factors for the evaluation of the amount of incentive payments made to the named plaintiff include "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, ... and reasonabl[e] fear[s of] workplace retaliation." *Staton,* 327 F.3d at 977 (citation omitted).

and provided them with an abundance of information"); *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 571–72 (7th Cir.1992) (upholding a district court's rejection of a proposed $10,000 award to a named plaintiff "for his admittedly modest services" in a settlement of $45 million).

### ii. *Apportionment of Payments Among Unnamed Plaintiffs*

Settling parties are warned that "singling out a large group of non-named plaintiff class members for higher payments without regard to the strength of their claims" could eliminate "the fairness of the settlement for the class as a whole." *Staton*, 327 F.3d at 977. Here, the three-step process for apportioning the settlement among claimants [16] is concerning because it calculates individual awards based on the duration of each claimant's employment during the class period, not on the actual strength of each claimant's claim. (Settlement Agreement ¶ 11(c)-(d).)

Because the class is defined as "all servers ... who work or worked for [defendant]" during the class period, (Settlement Agreement ¶ A.4), there is no distinction between, for instance, full-time and part-time servers. Using the proposed procedure, therefore, a claimant with an equal or stronger claim could receive a smaller portion of the settlement than a claimant with a weaker claim simply because the latter claimant worked for the defendant longer than the former claimant during the proposed class period.[17] At the fairness hearing, the parties must demonstrate to the court that the procedure for allocating the settlement complies with the aforementioned standard of fairness.

While portions of the parties' proposed settlement agreement admittedly suffer from the shortcomings discussed above, the court trusts that these deficiencies can be cured prior to the final fairness hearing in order to ensure a fair, adequate, and reasonable settlement. Accordingly, because the court preliminarily finds that the class meets the requisite certification standards and the terms of the parties' settlement are acceptable pending the fairness hearing, the stipulation will be granted.

IT IS THEREFORE ORDERED that the parties' joint motion for preliminary approval of settlement be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that

(1) the following class be provisionally certified for the purpose of settlement in accordance with the terms of the stipulation: All servers, including server breakers, who work or worked for defendant at any Olive Garden restaurants in the state of California from August 3, 2003 through June 10, 2008;

(2) if the stipulation does not receive the court's final approval, should final approval be reversed on appeal, or should the stipulation otherwise fail to become effective for any reason (including any party's exercise of a right to terminate under the stipulation), the court's preliminary grant of certification of the class shall be vacated and become null and void without further action or order of the court;

(3) the stipulation and the settlement provided therein are preliminarily approved as fair, reasonable, and adequate within the meaning of Federal Rule of Civil Procedure 23, subject to final consideration at the fairness hearing provided for below;

(4) for purposes of the stipulation and carrying out the terms of the settlement only:

---

**16.** The parties proposed three-step process for apportionment of payments among claimants will function as follows: first, add together all of the months worked by every claimant to determine the "Total Work Months;" next, divide the "Net Payment" by the "Total Work Months" to find the "Dollars per Work Month"; finally, multiply the "Dollars per Work Month" by the number of months the individual claimant worked. (Settlement Agreement ¶ 11(c)-(d).)

**17.** For example, imagine Server A worked *forty hours/month* at one of defendant's California locations for twelve months during the class period, while Server B also worked the same 480 hour total but at a rate of *forty hours/week*—thus working a total of three months compared to Server A's year-long stint. Despite working an equal total amount of hours as Server A and thus suffering from identical exposure to defendant's alleged employment improprieties, Server B's settlement recovery would nonetheless be four times less than Server A's settlement recovery.

a. plaintiff Denise Alberto is appointed as the representative of the class;

b. the law firm of Westrup Klick L.L.P. is appointed as Class Counsel for the class and shall be responsible for the acts and activities necessary or appropriate to present this stipulation and the proposed settlement to the court for approval and, if the settlement is finally approved, to implement the settlement in accordance with the terms of the stipulation and orders of the court;

(5) Simpluris, Inc. is hereby approved and appointed as the Settlement Administrator to carry out the duties of the Claims Administrator set forth in the stipulation;

(6) the form and content of the Notice of Settlement of Class Action (Poliner Decl. Ex. 1) is approved;

(7) the form and content of the Class Claim Form (Poliner Decl. Ex. 2) is approved;

(8) the form and content of the Request for Exclusion Form (Poliner Decl. Ex. 3) is approved;

(9) a hearing (the "Final Fairness Hearing") shall be held before this court on October 27, 2008 at 2:00 p.m. in Courtroom 5 to determine whether the proposed settlement, on the terms and conditions set forth in the stipulation, is fair, reasonable, and adequate and should be approved by the court; to determine whether a judgment as provided in the stipulation should be entered finally approving the settlement; and to consider class counsel's applications for attorneys' fees, reimbursement of costs, and service payments. The court may continue the Final Fairness Hearing without further notice to the members of the class;

(10) within thirty-one (31) days before the Final Fairness Hearing, Class Counsel shall file with this court their petition for an award of attorneys' fees and reimbursement of expenses. Any objections or responses to the petition shall be filed no later than twenty (14) days before the Final Fairness Hearing. Class Counsel may file a reply to any opposition to memorandum filed by any objector no later than seven (7) days before the Final Fairness Hearing.

(11) within thirty-one (31) days prior to the Final Fairness Hearing, Class Counsel shall serve and file with the court the Settlement Administrator's declaration setting forth the services rendered, proof of mailing and list of all class members who have time opted out of the settlement;

(12) within thirty-one (31) days prior to the Final Fairness Hearing, Class counsel shall file and serve all papers in support of the settlement, request for enhancement for the class representative, and any request for attorneys' fees and costs;

(13) any person who has standing to object to the terms of the proposed settlement may appear at the Final Fairness Hearing in person or by counsel, if an appearance is filed as hereinafter provided, and be heard to the extent allowed by the court in support of, or in opposition to, (1) the fairness, reasonableness, and adequacy of the proposed settlement; (2) the requested award of attorneys' fees, reimbursement of costs, and incentive payment to class representative; and/or (3) the propriety of class certification. To be heard in opposition, a person must, within forty-five (45) calendar days after notice is mailed, (a) serve by hand or through the mails written notice of his, her, or its intention to appear, stating the name and case number of this litigation and each objection and the basis therefore, together with copies of any papers and briefs, upon class counsel and upon counsel for defendant, and (b) file said appearance, objections, papers and briefs with the court, together with proof of service of all such documents upon counsel for the parties. Responses to any such objections and Class Counsel's application for attorneys' fees, reimbursement of costs, and the class representative's incentive payment shall be served by hand or through the mails on the objectors (or on the objector's counsel if any there be) and filed with the Clerk of this court no later than fourteen (14) calendar days before the Final Fairness Hearing. Objectors may file optional replies no later than one week before the Final Fairness Hearing in the same manner described above. Any settlement class member who does not make his, her, or its objection in the manner provided herein shall be deemed to

have waived such objection and shall forever be foreclosed from objecting to the fairness or adequacy of the proposed settlement as memorialized in the stipulation, the judgment entered, and the award of attorneys' fees, expenses, and the incentive payment unless otherwise ordered by the court;

(14) pending final determination of whether the settlement should be ultimately approved, the court preliminarily enjoins all class members (unless and until the class member has submitted a timely and valid Request for Exclusion Form) from filing or prosecuting any claims, suits, or administrative proceedings regarding claims to be released by the settlement.